# E. B. WEBSTER, Respondent, v. A. W. BEAR, Appellant.

### Kansas City Court of Appeals, February. 7, 1910.

1. **BILLS OF LADING: Ownership of Property Therein Described: Conversion.** Plaintiff doing business at Narka, Kansas, contracted by correspondence with the Ft. Scott Produce Company at Kansas City, Missouri, for the sale to it of a carload of eggs, storage packed, at an agreed price, ninety per cent of which price was to be paid by draft on shipment of said eggs. A carload of eggs consists of four hundred cases. As soon as the contract of sale was made, the Ft. Scott Company arranged with defendant to handle the eggs at Chicago as commission merchants, which the defendant agreed to do, and it also agreed to advance to the Ft. Scott Company about ninety per cent of the value of the shipment. Plaintiff, instead of shipping four hundred cases of storage packed eggs, shipped 347 cases of storage packed eggs, as a compliance with his contract, and also shipped therewith fifty-two cases of "seconds" to be sold on plaintiff's account, and advised the Ft. Scott Company of that fact. Instead of drawing on the Ft. Scott Company for ninety per cent of the price of the 347 cases, plaintiff drew on it for the full price thereof. The Ft. Scott Company notified the defendant that the bill of lading for 399 cases of eggs and a draft for $1596.20 were at the bank, and requested defendant's check for that amount, which was sent to it, and it then paid plaintiff's draft, and delivered the bill of lading to defendant. Thereafter the Ft. Scott Company, advised the defendant of the mixed character of the shipment, and defendant thereupon declined to handle the shipment, and the car on arrival was therefore turned over to S. S. Borden, a Chicago commission dealer, to whom the bill of lading therefor was delivered, and he sold the 347 cases for $1613.44 and the fifty-two cases for $210.60 a total of $1824.15. Of this amount he remitted to defendant $1613.44, and the defendant, after deducting $5 for expenses, remitted to the Ft. Scott Company, $12.24. Plaintiff was the owner of the fifty-two cases of eggs, and the defendant was liable to him for the conversion thereof.

2. ———: ———: ———: **Evidence.** While a bill of lading is the symbolical representation of the goods which it describes, its transfer only carries such rights as the party in possession of the goods could transmit by actual corporal transfer of the goods themselves. Bills of lading are only prima-

facie evidence as to the intention of the vendor to part with his title to his property consigned to the carrier, and extraneous evidence is admissible to show his real interest.

3. ———: ———: ———. At the time the Ft. Scott Company transferred and delivered the bill of lading accompanying the draft, it had the title by purchase from the plaintiff of the 347 cases of storage packed eggs, but was not the owner of the other fifty-two cases, they having been consigned for sale on commission, and the transfer of the bill of lading did not vest ownership thereof in defendant.

4. ———: ———. Although an owner may be guilty of such negligence as to bar him from asserting his right to ownership of the property described in a bill of lading, this does not occur when he properly notifies the vendee.

5. **EVIDENCE: Copy: Practice.** Plaintiff offered in evidence the copy of a document, the original of which he had delivered to defendant. Defendant denied having the original in his possession. The court rejected the copy but gave plaintiff an opportunity to offer it later, but no formal offer was made. The finding of facts by the court tends to show that the court did consider it as he had a right to do. It was competent evidence, the original not being in the power of the plaintiff to produce.

Appeal from Jackson Circuit Court.—*Hon. Jno. G. Park*, Judge.

AFFIRMED.

*M. B. Aaron* for appellant.

(1) Defendant's demurrer to plaintiff's evidence should have been sustained. (2) The ruling of the trial court in admitting evidence after the motion for a new trial was overruled is error. St. Louis v. Brewing Co., 96 Mo. 677; Danforth v. Railroad, 123 Mo. 196; Taylor v. Switzer, 110 Mo. 410; Smith v. Ins. Soc., 101 Mo. App. 696. (3) The court erred in giving declarations of law numbered three and six.

*Dwight M. Smith* and *William H. England* for respondent.

(1) Error, if any, in overruling appellant's demurrer was waived by offering further evidence. Cad-

mus v. Bridge Co., 15 Mo. App. 86; Bowen v. Railroad 95 Mo. 268; Jennings v. Railroad, 112 Mo. 268; Hilz v. Railroad, 101 Mo. 42; McPherson v. Railroad, 97 Mo. 253.   (2)   Appellant's demurrer to respondent's evidence was properly overruled.   Robinson v. Jarvis, 25 Mo. App. 421; Donhan v. Hahn, 127 Mo. 439; Meier v. Blume, 80 Mo. 179; Dickerson v. Matheson, 57 Fed. R. 524; Sterne v. Wood, 11 Mo. 638; Morrow v. Car Co., 98 Mo. App. 351; Chapin v. Stahlhuth, 102 Mo. App. 299; Kyle v. Gaff, 105 Mo. App. 672; Land Co. v. Miller, 170 Mo. 240.   (3)   Copy of invoice was properly admitted in evidence.   Wellman v. Railroad (Mo.), 118 S. W. 31, 40; 17 Cyc. Law and Pr., p. 518; 3 Ency. Pl. and Pr., p. 429; Frank v. Alexander, 88 Mo. App. 35; Holland v. Cunliff, 96 Mo. App. 67; Tapana v. Shaffray, 97 Mo. App. 337; Wilson v. Todd, 64 Mo. 388.   (4)   No error in declarations of law.   Baumhoff v. Railroad, 171 Mo. 120; Mill Co. v. Spilker, 77 Mo. App. 409; Action v. Dooley, 74 Mo. 63; Brant v. Coal Co., 93 U. S. 326; Blodgett v. Perry, 97 Mo. 263.   (5) Bill of lading was Kansas contract, not negotiable, and appellant acquired no better right than his transferrer had.   Shaw v. Railroad, 101 U. S. 557; Branson v. Heckler, 22 Kan. 610; sec. 8014, Gen. Stats. Kan., 1901, Dassler; 1 Beach on Modern Law Contracts, p. 695; Kehoe v. Phillippi, 42 Mo. App. 284, p. 289; Freight Co. v. Standard, 44 Mo. 71; Porter on Laws of Bills of Lading, sec. 438; 1 Hutchinson Carriers, p. 186, sec. 175; Jones on Pledges and Coll. Securities (2 Ed.), sec. 230; Benj. on Principles of Sales, rule 26-28, pp. 106-120; Am. and Eng. Enc. Law (2 Ed.), p. 549; Bank v. Metcalf Co., 40 Mo. App. 494, p. 502; Allen v. McMonagle, 77 Mo. 478; Cyc. L. and Proc., vol. 6, p. 424; Am. and Eng. Enc. Law (2 Ed.), p. 754.

BROADDUS, P. J.—The plaintiff Webster, doing business in the name of Webster & Company, instituted this suit in a justice's court to recover of defendant,

A. W. Bear, doing business under the name of Bear Commission Company, the sum of one hundred and seventy-four dollars and eighteen cents, the value of fifty-two cases of eggs.

The facts are that on May 1, 1907, the Fort Scott Produce Company at Kansas City, Missouri, by telegram inquired of plaintiff who was doing business at Narka, Kansas, at what price he would sell them a car load of storage-packed eggs. Plaintiff telegraphed answer that he would take four dollars and sixty cents per case for such eggs. The Fort Scott Company then telegraphed to plaintiff its offer to take the eggs at the price named, to which he replied by wire, accepting the offer for shipment before May 10th. A car of eggs contains four hundred cases. The Fort Scott Company then wired plaintiff to notify it when he would be ready to ship so the company could give him the routing and manner of billing the car and to draw ninety per cent. Plaintiff then notified the Fort Scott Company that the car would be shipped on May 9th, whereupon said company instructed plaintiff to route and bill the car to defendant at Chicago. On receiving the telegram of plaintiff accepting the offer of the Fort Scott Company for a car of storage packed eggs, the agent of the company called on defendant and asked him if he could handle the car of eggs for said company. The defendant agreed to do so in the usual and customary manner of commission merchants and as the Chicago market for eggs was stronger than the Kansas City market, the defendant requested that the car be routed to Chicago, and as the custom was among commission merchants who handle goods for others, defendant agreed with the company to advance to it about ninety per cent on the car. The Fort Scott Company wired plaintiff to bill the car to defendant at Chicago, and to draw on it for ninety per cent.

On May 9th, plaintiff shipped a carload containing three hundred and ninety-nine cases and billed it to de-

fendant at Chicago, and at the same time drew a sight draft through the National Bank of Commerce of Kansas City, Missouri, on the Fort Scott Company for one thousand, five hundred and ninety-six dollars and twenty cents.

On May 10th, the draft was presented for payment to the Fort Scott Company, at which time Mr. Boterf, who was said company's agent, notified defendant that the bill of lading showing a carload of three hundred and ninety-nine cases, and a draft for one thousand five hundred and ninety-six dollars and twenty cents, were at said bank and asked defendant for a check in the amount of said draft. Defendant upon ascertaining that the draft did not exceed ninety per cent of the contract price of the eggs issued his check for the amount. Boterf then paid the draft which was drawn upon his company, and delivered the bill of lading to defendant. In the meantime the car was on its way to Chicago, where defendant also did business, he at the time supposing the car to contain three hundred and ninety-nine cases of storage-packed eggs. On May 14th, Boterf informed defendant that he had learned that there were fifty-two cases of eggs, known as "seconds." Upon receiving this information defendant informed Boterf that he did not care to handle a mixed car of eggs in Chicago and suggested that Mr. Boterf have the car turned over to some Chicago firm to handle. Accordingly the car was turned over to S. S. Borden & Co., of Chicago. The bill of lading was then forwarded to S. S. Borden, who on May 18th, sold the car and remitted one thousand six hundred and thirteen dollars and forty-four cents of the proceeds with account of sales. The remittance was received by defendant who, after deducting therefrom the sum of one thousand five hundred and ninety-six dollars and twenty cents the amount originally advanced to the Fort Scott Company and five dollars for expenses, gave to the Fort Scott Company a check for balance in the sum of twelve

dollars and twenty-four cents. The account of sales thus rendered showed a sale of three hundred and forty-seven cases at one thousand six hundred and thirteen dollars and fifty-five cents and the fifty-two cases at two hundred and ten dollars and sixty cents, making a total of one thousand eight hundred and twenty-four dollars and fifteen cents realized from the sale of all the eggs.

It is necessary to go back to the time of the shipment of the eggs. The plaintiff found that he had only 347 cases of storage-packed eggs, and as they did not fill the car he put in on his own account fifty-two cases of seconds and instead of drawing on the Fort Scott Company for ninety per cent of the contract price he made his draft to cover the whole value. It will thus be seen he was entitled to receive from some one the separate value of the fifty-two cases of seconds which he shipped on his own account. The question is who is liable to him for such value. The sight draft made by plaintiff on the Fort Scott Company at Kansas City for the full contract price of the 347 cases of eggs was attached to a duplicate of the bill of lading issued by the carrier accompanied by a written statement showing that the draft covered the full amount of the contract price for the 347 cases, and further showing that the car contained 52 cases of seconds. At the same time plaintiff wrote a letter to the Fort Scott Company stating these facts and that the fifty-two cases of eggs had been consigned to defendant for sale on his own account. The plaintiff wrote to defendant at Chicago also stating these facts but it does not appear that this letter was ever delivered. About this time the Fort Scott Company had ceased to do business in Kansas City, but had left its agent, Mr. Boterf, to continue the negotiations with defendant.

There is evidence tending to show that both Boterf and defendant knew of the shipment of the fifty-two cases of eggs on plaintiff's own account, independent of the 347 cases shipped on contract. Boterf in his evi-

dence equivocates as to that matter, but it is certain that he must have been fully informed by the letter and the statement of plaintiff at the time the latter sent the draft that the fifty-two cases of eggs were not shipped on the contract of sale of storage-packed eggs. The evidence as to whether defendant was so informed is very slight. The laws of Kansas, sec. 8014, General Statutes of 1901; the case of Bronson v. Heckler, 22 Kan. 610, and Shaw v. Railroad, 101 U. S. 557, were introduced in evidence.

A jury was waived and trial was had before the judge. The finding and judgment were for plaintiff and defendant appealed.

Judging from the declarations of law given by the court, the court found that the bill of lading under the law of Kansas where it was issued was non-negotiable; and Boterf was the agent of defendant and that defendant was bound to have had notice of all the facts and circumstances which came to the notice of the said Boterf while he was acting as such agent.

It is held that: "To facilitate commercial transactions, a bill of lading has grown to be regarded as the symbolical representation of the goods which it describes, but its transfer only carries with it generally such rights as the party in possession of the goods could transmit by actual corporal transfer of the goods themselves." [Bronson v. Heckler, 22 Kan. 610.]

At common law bills of lading were not negotiable. And it is held that statutes, like our own for instance, in using the words that bills of lading "shall be and are hereby made negotiable by written endorsement thereon and delivery in the same manner as bill of exchange and promissory notes," are not thereby placed on the same footing as such bills of exchange and promissory notes, because the latter stands for money and the other is symbolical of personal property. A transfer of a bill of exchange for a valuable consideration with the proper indorsement thereon by one in possession, although his

possession may be without a shadow of right vests in the transferee title against all the world. The transfer and delivery of a bill of lading is in effect a transfer of the possession and title of the personal property which it symbolizes, in like manner as bills of exchange are transferred, but not with like effect. The finder of goods lost or stolen will not divest ownership of the person who lost them. [Shaw v. Railroad, 101 U. S. 557.] "The bill of lading cannot be regarded (unless by virtue of statutory enactment) as an absolute muniment of title, i. e., a document that vests in the holder a right of possession which cannot be assailed." And, "This is true although in many instances the holder obtained the bill in good faith and for a valuable consideration." [Porter's Law of Bills of Lading, sec. 438.] "The transfer of a bill of lading operates only as a transfer of whatever title the transferee has at the time to the goods conveyed by it." [Alabama Bank v. Railroad, 42 Mo. App. 284.] "Bills of lading are only *prima facie* evidence as to the intention of the vendor to part with the title to his property consigned to the carrier, and extraneous evidence is admissible to show his real interest." [Scharff v. Meyer, 133 Mo. 428.] The transfer of a bill of lading for value by endorsement and delivery passes to the transferee whatever title the transferrer had to the property at the time. [Dickson v. The Merchants Elevator Co., 44 Mo. App. 498.]

At the time the Fort Scott Company transferred and delivered the bill of lading accompanying the draft, it had the title by purchase from the plaintiff of the 347 cases of storage-packed eggs, but was not the owner of the other fifty-two cases, they having been consigned for sale on commission, and the transfer of the bill of lading did not vest ownership thereof in defendant.

Although an owner may be guilty of such negligence as to estop him from asserting his right to ownership of the property described in the bill of lading, the court found that plaintiff had taken every precaution

to notify the consignee that the shipment of the fifty-two cases was on his own account and not on the contract of sale of the 347 cases. No fault can be found with the finding, as he sent a statement attached to the bill of lading to that effect.

The original of the statement above referred to was not produced on the trial. Its duplicate which plaintiff retained at the time was offered in evidence. Defendant testified that the original paper was not in his possession. The court rejected the copy at the time but stated that it would give plaintiff a chance to offer it later. But no formal offer was afterward made of it to the court. But the finding of the facts by the court that the statement or invoice had been forwarded with the draft and bill of lading goes to show that the court did consider it as evidence as it had the right to do, it once having been offered and insisted on as evidence. The court must have seen and known what it contained, and it was competent evidence, the original not being in the power of plaintiff to produce.

It is also insisted that defendant had nothing to do with the sale of the eggs. They were consigned to him and he caused them to be turned over to S. S. Borden & Company to sell. He received from the latter the proceeds of the sale and undertook to disburse them by paying them in part to the Fort Scott Produce Company. In the first place he only paid to said Fort Scott Company the purchase price of the 347 cases. He has in his hands the proceeds of the sale of the fifty-two cases less a small sum he paid to said company. In retaining possession of the proceeds of the sale, in law his act in so doing was a conversion of plaintiff's property for which he is liable. Finding no error in the trial the cause is affirmed. All concur.