## BURRTON STATE BANK, Appellant, v. PEASE-MOORE MILLING COMPANY, Respondent.

### Springfield Court of Appeals, April 1, 1912.

1. **BANKS AND BANKING: Draft with Bill of Lading Atttached: Ownership of Property: Notice of Ownership.** A brokerage company placed an order with a grain company for a car of corn to be shipped to a milling company. The grain company upon shipping the corn issued a draft with bill of lading attached, and this draft and bill of lading were assigned and delivered to plaintiff bank and the amount thereof placed to the credit of the grain company. Plaintiff claimed to have sent this draft to a bank located in the same town as the defendant milling company, but in some way, perhaps through mistake in the postoffice, the letter containing the draft and bill of lading, was received by the defendant, who took the bill of lading, surrendered the same to the railroad company and obtained the car of corn, and later remitted to the brokerage company the amount of the draft. *Held*, in a suit by the bank against the milling company that under the evidence the defendant was still liable to the bank for the amount of the draft and its payment to the brokerage company was no defense.

2. ———: ———: ———: ———: **Prima Facie Case.** A grain company, on the order of a brokerage company, shipped a car of corn to defendant and drew a draft upon the defendant with bill of lading attached, for the purchase price of the corn. This draft and bill of lading were assigned to the plaintiff bank, which credited the grain company's account with the amount of the draft. The defendant claimed that it purchased the corn from the brokerage company, with no knowledge of the plaintiff's claim, and it paid the brokerage company for the corn. *Held*, that if there was any substantial evidence to support defendant's contention the issue was for the jury. *Held, further*, that where defendant admitted that before it got possession of the corn it received through the mail the bill of lading therefor and a draft attached thereto for the car of corn, each of which showed that it had been assigned to plaintiff, that this made a prima facie case that the money for the corn was claimed by the plaintiff and that a subsequent payment to the brokerage company would not relieve defendant from liablity to the plaintiff.

3. ———: ———: ———: ———: **Sending Draft Direct to Vendee.** Where a draft is attached to a bill of lading, covering a shipment of goods to the vendee, and this draft and bill of lading are sent direct to the vendee, with an endorsement of the bill of lading to the vendee, the vendee does not acquire title to the goods until he has honored the draft.

4. **BILLS OF LADING: Symbol of Property: Retaining Title of Property Shipped: Commerce.** It is of the utmost importance to commerce that a bill of lading should have full effect as an instrument by which a vendor or shipper may retain his title and right of possession to the property shipped, using the bill of lading as a symbol of the property to express his intentions as to the conditions upon which the property should be delivered.

5. ———: **Negotiable Instruments: Delivering Property Covered by Bill of Lading: Commerce.** The Legislature of this state has provided that a bill of lading shall be negotiable and that all persons to whom the same may be transferred shall be deemed and held to be the owner of the goods described in the bill of lading and that no property specified in such bill shall be delivered except on surrender and cancellation of the bill.

6. **BANKS AND BANKING: Draft With Bill of Lading Attached: Refusal to Pay Draft: Right of Action in Bank.** Where a grain company shipped a car of corn to the defendant and issued a draft and attached the bill of lading to the same and assigned both to the plaintiff bank, and the bank credited the grain company with the amount of the draft, the bank

may properly sue the defendant upon its refusal to pay the draft and the fact that it might have a right to charge back the amount thereof against the grain company's account would not prevent the bank acquiring the title to the draft and bill of lading by the endorsement of the grain company.

7. ———: ———: **Bank Not Responsible for Quality of Goods Shipped.** According to the great weight of authority, banks in handling drafts attached to bills of lading, do not become personally responsible for the quantity or quality of property described in the bill of lading.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. N. Burroughs* for appellant.

(1) On the whole record it was undoubted error on the part of the court to refuse plaintiff's peremptory instruction. Williams v. Williams, 132 Mo. App. 266; Coleman v. Reynolds, 207 Mo. 463; Maloy v. Sweazea, 123 Mo. App. 179; Bank v. Eubanks, 124 Mo. App. 499; Strauss v. Gum Co., 134 Mo. App. 110. (2) Although defendant may have acted in good faith and believed that Knight was authorized to collect for the car of corn, yet, that would constitute no defense to this action. Moore v. Simms, 47 Mo. App. 182. (3) Instruction No. 3 for defendant is erroneous for the same reason charged against No. 2, and also for the further reason: First, there is no evidence tending to show that plaintiff bank or the grain company accepted or agreed to look to the Knight Brokerage Company for payment. Second, although such an agreement existed it would be necessary for defendant to prove and for the jury to find under the instruction that the defendant, the plaintiff or the grain company and the Knight Brokerage Company were all parties to such agreement, nor does the instruction complained of require any finding of that fact by the jury. Bank v. Walker, 132 Mo. App. 117. Third,

because such agreement would not be valid and binding unless it was shown to have been based upon a valuable consideration. No consideration of any kind or character appears from the testimony. Gerhart Realty Co. v. Assurance Co., 94 Mo. App. 356; Cox v. Sloan, 158 Mo. 411. (4) In the case at bar the shippers were the owners of the flour and had absolute control over it. They consigned it to the defendants and drew upon them against the shipment, delivering over to the plaintiff the bills of lading as collateral to the drafts, which the plaintiff discounted. The defendants having refused to accept, they were not at. liberty to appropriate the flour or the proceeds of it to their own use. It was the property of the plaintiff for the purpose of meeting the dishonored drafts. Bank v. Homeyer, 45 Mo. 145. (5) On a shipment directly to the consignee a delivery to the carrier is a delivery to the consignee but that is not so when the shipment is to the consignor's own order. In the latter instance he does not part with his property. Milling Co. v. Stanley, 132 Mo. App. 308.

*R. S. Hogan* and *Green & Wayland* for respondent.

(1) The credibility of witnesses and the weight to be given to evidence is for the determination of the trial court and the jury and that determination is conclusive on appeal. Gregory v. Chambers, 78 Mo. 294; Lalor v. McDonald's Admr., 44 Mo. App. 439; Polhaus v. Railroad, 45 Mo. App. 153; Hurst v. Scammon, 63 Mo. App. 634; Saetelle v. Ins. Co., 81 Mo. App. 509; Love v. Ins. Co., 92 Mo. App. 192; Golden v. Tyler, 180 Mo. 196; State v. Murphy, 46 Mo. 347; Tower v. Pauly, 76 Mo. App. 287. (2) Where there is some evidence on which a verdict can be sustained the court will not interfere by usurping the province of the jury and pass on the credibility of the witnesses. Clark v. Shrimski, 77 Mo. App. 166; Talman

Co. v. Hunter, 113 Mo. App. 671; St. Louis v. Packet Co., 214 Mo. 654. (3) The evidence must be considered most favorable to the respondent. Wamach v. Jenkins, 128 Mo. App. 412; Sparks v. Jasper County, 213 Mo. 218. (4) It is for the trial court not the appellate court to decide a point involving a determination of the weight of evidence. Conrad v. Railroad, 116 Mo. App. 517; Levels v. Railroad, 196 Mo. 616; Dowling v. Wheeler, 117 Mo. App. 182.

GRAY, J.—The plaintiff is a banking corporation located at Burrton, Kansas, at which place at the time this controversy arose, was a business concern known as the Burrton Grain Company. The defendant was a milling company, doing business at West Plains, this state. The Knight Brokerage Company was doing a grain brokerage business at Cherokee, Kansas. In May, 1910, the Burrton Grain Company received an order from one Knight, the owner of the brokerage company, to ship a car of corn to the Star Milling Company at Mountain Grove, this state. The car was forwarded by the Grain Company, with draft and bill of lading attached. The corn was refused at Mountain Grove by the milling company, for the reason that the invoice did not cover the kind of grain ordered. The grain company immediately notified Knight, who instructed the grain company to issue a new draft and bill of lading on the defendant company at West Plains, to which point the car of corn would be forwarded. The grain company issued a new draft, on the defendant company, with new bill of lading attached, and forwarded the same to the First National Bank at West Plains for collection. The draft was dated June 11, 1910, and was presented to the milling company by the bank for payment, and payment being refused, was protested on June 16th.

On the day the draft was issued, the grain company mailed to the milling company an invoice of the

car of corn. The milling company claimed payment of the draft was refused because it had purchased no corn from the grain company, and none was at West Plains at the time to be delivered. It appeared, however, from the testimony that on June 16th, the milling company wrote the grain company, stating that the car of corn was on the track at West Plains, but there were extra freight charges and demurrage against the car, and the price was three cents too high. A few days later negotiations were resumed between the brokerage company and the defendant, and an agreement for the purchase of the corn was made. On June 23rd, a second draft on defendant was issued by the grain company, and it and the bill of lading were assigned and delivered to plaintiff. The draft was for the sum of $474, and which amount was, by the bank, placed to the credit of the grain company, and entered in its pass book.

The second draft with the bill of lading and a letter to the bank at West Plains (and according to plaintiff's testimony, all enclosed in a single envelope) came into the hands of the milling company about the 25th or 26th of June. The plaintiff claimed they were mailed to the bank at West Plains, but it seems the bank never received them. The plaintiff's theory was that by mistake, the envelope was addressed to the defendant instead of the bank, or that through the mistake of the postoffice employees at West Plains, it was deposited in the box of the defendant. The evidence showed that the boxes of the bank and the milling company were adjacent. The defendant claimed it received the bill of lading through the mail about the 25th or 26th of June; that the envelope was opened and destroyed, and that the defendant then took the draft and bill of lading and surrendered the latter to the railroad company, and thereupon the car of corn was delivered to it. The defendant kept the draft, and in a day or two remitted to the brokerage com-

pany for the car of corn, and refused to pay the plaintiff, and this suit was instituted in the circuit court of Howell county to recover for the corn.

The petition is in two counts. The first alleges, that the grain company shipped the defendant a car of corn, which defendant had agreed to receive and pay for on delivery; that the grain company issued a draft on defendant for the sum of $474, the price of the corn, and with bill of lading attached, for value, assigned both the draft and bill of lading to the plaintiff, and thereby plaintiff became the owner of the draft and bill of lading, and entitled to the car of corn, or the proceeds thereof; that the defendant, without paying for the corn, and with knowledge of plaintiff's ownership of said draft and bill of lading, took possession of the corn and appropriated the same to its own use and fails and refuses to pay plaintiff for said corn; that on account thereof, the defendant owes and stands indebted to plaintiff in the sum of $474, for which it prays judgment with costs.

The second count charges that the defendant converted the corn and prays for damages in the sum of $474, with interest. The case was tried before a jury, resulting in a verdict in favor of the defendant, from which the plaintiff appealed.

The defendant claimed that it purchased the corn of the brokerage company with no knowledge of the plaintiff's claim thereto, and that without such knowledge it paid the brokerage company for the corn. If this is true, or if there is any substantial evidence in support of it, the issue was for the jury. The defendant admits, however, that before it got possession of the corn, it received through the mail the bill of lading therefor, and a draft attached thereto, for the car of corn, each of which showed that they had been assigned to the plaintiff. This made a prima facie case that the money for the corn was claimed by the plaintiff. [Scharff v. Meyer, 133 Mo. 428, 34 S. W. 858;

Webster v. Bear, 141 Mo. App. 531, 125 S. W. 815; Alabama Bank v. Railroad, 42 Mo. App. 284; Smith Co. v. Railroad, 145 Mo. App. 394, 122 S. W. 342.]

In order for the defendant to get the car of corn, it was necessary for it to present to the railroad company the bill of lading. This bill of lading showed that the consignor was the Burrton Grain Company, and that that company had assigned its interest in the bill of lading and the draft attached thereto, to the plaintiff. The bill of lading disclosed that the corn was consigned to the order of the grain company, with instructions to notify the defendant company. In other words, the transaction was one that is carried on every day where grain is shipped from one person to another, and there was nothing unusual about the transaction, except that the draft and bill of lading were received by the defendant instead of the bank at West Plains.

Mr. Tiedeman, in his work on Commercial Paper, section 494, says: "Very often, for the protection of the vendor, the bill of lading for the goods shipped is sent to the vendee, attached to a bill of exchange for the purchase money; the object being to make the passing of title to the goods contingent upon the honoring of the bill of exchange. The transfer of the bill of lading, in such a case, is conditional. If it is sent direct to the vendee with an indorsement of the bill of lading to the vendee, together with a bill of exchange on him for the purchase money, the vendee does not acquire title to the goods, until he has honored the bill of exchange. And this is also true, where, as is the more common custom, the bill of lading is attached to a bill of exchange on the vendee, and both are sent to a correspondent for the collection of the draft, and a delivery of the bill of lading upon payment of the draft. In such cases, the consignee must honor the bill of exchange or surrender the goods."

In Greenwood Grocery Co. v. Canadian County Mill & Elevator Co., 52 S. E. 191, 2 L. R. A. (N. S.) 79, the Supreme Court of North Carolina said: "As between the vendor and purchaser, the authorities leave no room to doubt, however, that, even if the bill of lading provides for delivery to the consignee, yet, if the consignor draws for the price, attaching the bill of lading to the draft, this is sufficient evidence of his intention to reserve the title and right of possession until the draft is paid, and the consignee is not entitled to the goods until payment." In that case the plaintiff was suing for a breach of a contract to deliver a carload of flour. The flour was shipped with draft attached to a bill of lading. The draft required the payment of five dollars and fifty cents per barrel for the flour, instead of four dollars and fifty cents, the agreed price. The plaintiff refused to pay the draft because of the excess, and on account thereof, lost the flour, and commenced suit against the defendant by attachment, and seized the flour in the hands of the railroad company. The defendant claimed that when the flour was delivered to the carrier, consigned to the plaintiff, it ceased to be the property of the defendant, and therefore, the attachment must fail. In passing on this question, the court said: "Even if the draft and bill of lading had been sent to the plaintiff itself under such conditions as exist here, it could not have retained the bill of lading, which was the symbol of the goods, without payment, or at least acceptance, of the draft." To the same effect are Emery v. Irving Nat. Bank, 25 Oh. St. 360, 18 Am. Rep. 299; 1 Benjamin on Sales, 570; Bank of Rochester v. Jones, 4 N. Y. 497, 55 Am. Dec. 290; Cayuga County Nat. Bank v. Daniels, 47 N. Y. 631; Marine Bank v. Wright, 48 N. Y. 1.

Under these decisions, which we believe correctly declare the law, the defendant could not take the bill of lading with the draft attached, both of which were

endorsed to plaintiff, and receive the car of corn and refuse to pay the draft. It is true, defendant paid for the corn once, and should not be required to pay again, but it did not pay the brokerage company until it had received the plaintiff's bill of lading and draft, and must have known that the corn was shipped by the grain company to its own order, and that the plaintiff was claiming the proceeds therefrom. As said by the North Carolina court in the Greenwood case: "It requires no argument to show that it is of the utmost importance to commerce that a bill of lading should have full effect as an instrument by which a vendor or shipper may retain his right of possession —*jus disponendi*—using it as a symbol of the property to express his intention as to the conditions upon which the property should be delivered. The courts of this country and of England have with practical unanimity given the bill of lading this force."

The Legislature of this state, by statute, has recognized the important part the bill of lading performs in these commercial transactions, by providing that they shall be negotiable, and that all persons to whom the same may be transferred shall be deemed and held to be the owner of the goods, merchandise, grain or commodity described in the bill of lading, and that no property specified in such bills shall be delivered, except on surrender and cancellation of the bill of lading. [Sections 11956 and 11957, Revised Statutes 1909.]

In Smith Co. v. Railroad, 145 Mo. App. 394, 122 S. W. 343, it is held that the delivery of a bill of lading is strong presumptive evidence that title has passed to the party named therein, or his assignee.

In Dickson v. Merchants' Elevator Co., 44 Mo. App. 498, the St. Louis Court of Appeals said: "By the statute of this state, and also by the law merchant, as understood and constantly administered in this country, a bill of lading is a symbol of the goods

in such a sense that the transfer of it, by indorsement and delivery for value, passes to the transferee whatever title to the goods the transferor had at the time.''

We are of the opinion that the defendant was bound to ascertain for its own protection, whether it was justified in ignoring the apparent title held by plaintiff as holder of the bill of lading, and that by ignoring this title and remitting to the brokerage company for the corn, it acted at its peril.

The respondent further contends that the plaintiff cannot maintain this action. This contention is based upon the theory that the grain company was the owner of the car of corn, and that appellant was only acting as its agent. The evidence discloses that at the time the grain company endorsed the draft and bill of lading to the appellant, it was given credit on its pass book with the appellant for the full amount of the draft, and the same was subject to check. There was some testimony that the grain company tried to collect from the brokerage company the amount that respondent had remitted to it, and that the brokerage company paid a small sum of interest to the grain company. There was no evidence that the appellant knew anything about this, or was in any wise connected with it, but even if it did, it would not prove that plaintiff was not entitled to maintain this action, as the conduct of the grain company may be accounted for on the theory that the bank, in case it failed to collect the amount of the draft, had the right to charge the amount of it back against the account of the grain company, and yet, this right to charge back would not prevent the bank's acquiring the title to the draft and bill of lading by the endorsement of the grain company. [Ayres v. Bank, 79 Mo. 421; Flannery v. Coates, 80 Mo. 444; Handley v. Globe Refining Co., 106 Mo. App. 20, 79 S. W. 1163.]

The respondent further contends because the

draft to which the bill of lading was attached contained the following language, "this bank hereby notifies all parties concerned that it is neither responsible for the quantity, quality or delivery of goods covered by the bill of lading attached to this draft or otherwise, but acts only as the medium of collection," that it conclusively shows that appellant was acting only as the agent of the grain company. This porvision, so far as the liability of the bank was concerned for the quantity, quality or delivery of the corn, was mere surplusage, as the great weight of authority is that the banks, in handling these bills of lading and drafts attached thereto, do not become personally responsible for the quantity or quality of the property described in the bill of lading.

It is true a different ruling prevails in Texas, North Carolina and Alabama, but the decisions of these states are in conflict with the great weight of authority.

The case of Finch v. Gregg, 126 N. C. 176, 35 S. E. 251, holding that the bank is liable for the quantity and quality of the goods shipped, is reported in the 49 L. R. A. 679, and in the note to that case it is held that the rule is unsound and out of line with the great weight of authority.

In Tolerton & Stetson Co. v. Bank, 84 N. W. 930, 112 Ia. 706, 50 L. R. A. 777, the Texas case of Landa v. Lattin, 46 S. W. 48, holding the bank liable, and also the case of Finch v. Gregg, supra, are considered and repudiated, the court saying: "The rule of the Landa case is founded on the thought that the transfer of the draft and bill of lading to the bank amounted to a sale of the goods, and that the bank as a purchaser undertook to deliver the goods and carry out the Canneries Company's contract with plaintiff, and because of these facts it necessarily assumed the contract of warranty, although it may have been in fact ignorant that any warranty was made. But the prem-

ises are not correct. The transaction between the Canneries Company and defendant was not and could not be a sale of the goods, for they had already been sold to plaintiff, and it was the intention of all parties that such sale to plaintiff should be consummated by delivery.''

In Lewis v. Small & Co., 96 S. W. 1051, 6 L. R. A. (N. S.) 887, all the cases on this subject are reviewed, and it is there shown that the decisions of the Texas, Alabama and North Carolina courts are not in harmony with the great weight of authority. After reviewing the cases and holding that the bank is not liable for the quality or quantity of the grain shipped, the court said: ''It is a fact of common knowledge that a large part of the commercial business of the country is carried on through the medium of drafts, and that the immense crops of the south and west are marketed under contracts to draw for the purchase price with bills of lading attached. If the courts shall adopt the rule insisted upon by the complainants, it will result in destroying this convenient method of handling, moving, and paying for the crops of the country, for the banks will necessarily be compelled to refuse to buy drafts with bills of lading attached, or to handle them as collateral security or otherwise. Banks have neither the time nor the facilities to investigate the genuineness of bills of lading, or the contracts made between their customers with parties residing in other states, and to hold them responsible for the frauds and mistakes of shippers would utterly destroy the negotiability of drafts with bills of lading attached. . . . With all due deference to the ability and standing of the courts of Alabama, Texas and North Carolina, we are of the opinion that the rule which they announce is unsound and contrary to the otherwise unbroken weight of authority.''

The bank had the possession of the draft and bill of lading, and was thereby clothed with authority to

collect the same, and when the defendant received the draft and bill of lading giving notice of plaintiff's title, and thereafter took possession of the car of corn, and refused to pay the draft, it became liable to the bank for the amount thereof. And the bank's right to maintain the suit is supported by ample authority in this state. [Hamlin v. Carruthers, 19 Mo. App. 567; Dickson v. Merchants' Elevator Co., supra; Flannery v. Coates, supra; Frazier v. Railroad, 104 Mo. App. 355, 78 S. W. 679; Bank v. Smith, 107 Mo. App. 178, 81 S. W. 215; Rosencranz v. Swofford D. G. Co., 175 Mo. 518, 75 S. W. 445.]

If we are correct, the judgment in this case is for the wrong party, and we will reverse and remand it with directions to enter judgment for plaintiff. All concur.