TRADESMEN'S STATE BANK v. FT. WORTH ELEVATORS CO. (No. 9092.)

(Court of Civil Appeals of Texas. Ft. Worth. April 26, 1919. Rehearing Denied May 31, 1919.)

1. BILLS AND NOTES ☞292—INDORSEMENT OF DRAFT FOR COLLECTION—LIABILITY OF INDORSEE.

Though under an indorsement on a draft, "Pay any bank or banker or order," the indorsee may have sufficient title to support an action against the drawer or acceptor, such right does not render the indorsee liable on its own subsequent indorsement made in furtherance of collection.

2. BILLS AND NOTES ☞295—CARRIERS ☞58 —INDORSEMENT OF DRAFT—EFFECT.

The indorsement on the back of a draft by a bank to which it was forwarded for collection, "Pay any bank or banker, all previous indorsements guaranteed," merely guaranteed the genuineness of the prior indorsements, and did not guarantee payment of the draft, nor the existence, quality, or quantity of the wheat mentioned in the accompanying bill of lading.

3. CARRIERS ☞58—INDORSEMENT OF BILL OF LADING—EFFECT.

Indorsement in blank of a bill of lading merely transfers the right held by the transferor in the property mentioned in the bill, and an indorsement restricted to a particular person or bank transfers such rights as the indorser held in such property to his transferee, but does not constitute a guaranty of the quantity or quality of the goods, the fact that they exist, or the genuineness of the bill of lading.

Appeal from District Court, Tarrant County; R. E. L. Ray, Judge.

Suit by the Ft. Worth Elevators Company against the Tradesmen's State Bank. From judgment for plaintiff, defendant appeals. Reversed, and judgment rendered for defendant.

Wm. J. Berne, of Ft. Worth, for appellant.

B. K. Isaacs and Wade, Smith & Blow, all of Ft. Worth, for appellee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BUCK, J. On the date named H. L. Tankersley, a cotton broker at Hunnewell, Kan., doing business under the name of H. L. Tankersley & Co., deposited with the State Guaranty Bank of Blackwell, Okl., the following draft:

"H. L. Tankersley & Co., Hunnewell, Kansas.
"Dec. 30, 1916.
"Account-Car No. 30257 A T. Pay to the order of ourselves $1,890.00, eighteen hundred ninety and no/100 dollars, value received, and charge the same to account of
"H. L. Tankersley & Co.,
"By H. L. Tankersley.
"To the Ft. Worth Elevators Co.,
"Ft. Worth, Texas.
"% Farmers' & Mechanics' Natl. Bank."

Attached to this draft was a bill of lading purporting to have been issued by the Atchison, Topeka & Santa Fé Railroad Company at Hunnewell December 30, 1916, covering 71,000 pounds of bulk wheat consigned to the order of H. L. Tankersley, destination Galveston (for export), notify the Galveston Wharf Company at Galveston, state of Texas, car initial A., T. & S. F. car No. 30257. This purported bill of lading had the name of H. N. Stannard signed thereto as the agent of the railway company. H. N. Stannard was the agent of the A., T. & S. F. Ry. Co. at Hunnewell, but did not sign his name to said purported bill of lading, nor did any one else acting for said railway company sign the same, and it was admitted that said signature was a forgery. The State Guaranty Bank of Blackwell, Okl., had a checking account with Tankersley, and upon the deposit of said draft and bill of lading with said bank, and upon the indorsement of the draft by Tankersley, by signing "H. L. Tankersley" on the back thereof, Tankersley's account was credited with the amount of the draft, $1,890. Credit was given on January 2, 1917, which was the first business day following the deposit of the draft. The draft and bill of lading attached was sent by the State Guaranty Bank to the Tradesmen's State Bank of Oklahoma City, and by the latter bank forwarded to the Stockyards National Bank of Ft. Worth, to be collected and credited in the usual way. At the time the State Guaranty Bank had to its credit funds in the Tradesmen's State Bank sufficient to cover any deficit that might be created by reason of the draft in question not being paid, and in accordance with its custom in such transactions the Tradesmen's State Bank gave the Guaranty Bank credit for the amount of the draft, and when the Tradesmen's State Bank forwarded the draft to the Stockyards National Bank, the latter named bank was charged with the amount of said item. Upon receipt of the draft and bill of lading from the State Guaranty Bank, the appellant bank acknowledged its receipt in the following communication:

"The Tradesmen's State Bank.
"Oklahoma City, Jan. 2, 1917.
"Your favor of Dec. 30 is received with inclosures as stated.
"We credit as follows: 1890.
"In receiving items payable elsewhere than in Oklahoma City, this bank acts only as your agent and assumes no responsibility further than to use diligence through its ordinary and regular facilities in forwarding. Cash items credited on receipt subject to final payment.
"C. M. Bosworth, Cashier."

On January 3, 1917, said draft was paid by the Ft. Worth Elevators Company, and remittance to cover was made by the Stockyards National Bank to the Tradesmen's State Bank, and by the latter to the State Guaranty Bank. On the back of the draft when presented to the Ft. Worth Elevators Company there were the following indorsements:

(1) "Pay to any bank or banker. H. L. Tankersley."
(2) "Pay to any bank or banker, all previous indorsements guaranteed.
"86–152 Dec. 30, 1916. 86–152.
"The State Guaranty Bank,
"Blackwell, Oklahoma."
(3) "Pay any bank or banker, all previous indorsements guaranteed.
"39–15. Jan. 2, 1917. 39–15.
"Tradesmen's State Bank,
"Oklahoma City, Okla."
(4) "Received payment through Ft. Worth Clearing House.
"No. Jan. 3, 1917. 12.
"Stockyards National Bank,
"Ft. Worth, Texas."

On the back of the bill of lading was the same indorsement of appellant bank as that placed on the back of the draft; the bank's indorsement on the bill of lading being made by mistake of one of its employés. There was also indorsed the name "H. L. Tankersley," written by Tankersley himself.

Jule G. Smith, president of the Ft. Worth Elevators Company, testified that in paying the draft he was under the belief that the bill of lading attached represented a car of wheat; that this belief was based upon the signature of the agent, the indorsement of the shipper, and its coming through the bank, and that on the strength of the indorsements he paid the draft; that the Ft. Worth Elevators Company had no contract with H. L. Tankersley or H. L. Tankersley & Co. for the payment of this draft; that it had bought no wheat from Tankersley for which this bill of lading had been issued, and had no funds in its hands at the time belonging to Tankersley or Tankersley & Co. with which to meet the payment of the draft sued upon; that, acting for the Ft. Worth Elevators Company, he purchased the draft, believing that it covered a car of wheat, and that it had been regularly issued and properly indorsed

by the bank and the shipper; that, if the bill of lading attached to the draft had not contained the indorsement of the Tradesmen's State Bank, said draft would not have been paid; that the first intimation that he had that there was anything wrong with this draft or bill of lading was about February 15, 1917. Upon failure to locate the car of wheat, and upon information that it had not reached Galveston and could not be found, he wired the railway agent at Hunnewell, and later went to Hunnewell, Kan., and Blackwell, Okl., and made a personal investigation, and found that the bill of lading was a forgery.

The evidence further shows that H. L. Tankersley in March, 1913, opened an account with the State Guaranty Bank, and continued to do business with that bank under that name until his disappearance in February, 1917; that on April 14, 1917, Tankersley's account was closed by the bank's depositing $424.69 to the credit of Tankersley, to cover an overdraft, and charging the same up to loss. Plaintiff has never been reimbursed for any part of the amount paid for the draft and has never received any shipment of wheat described in the bill of lading.

On February 27, 1917, plaintiff filed suit against the Tradesmen's State Bank on said draft, alleging the issuance of the draft and bill of lading and indorsements thereon by defendant, and alleging that the bill of lading was a forgery and its issuance unauthorized by the railway company, and that the defendant, by reason of the premises, was chargeable with notice, when said draft was presented to the plaintiff, that the same was drawn to cover the value of the purported shipment of wheat, as mentioned in said draft and bill of lading, and that in paying for the same plaintiff was using its own funds, and was acting under the belief that it was purchasing a car of wheat of the value of $1,890. Defendant denied that it acted otherwise in the transactions than as a medium of collection for the State Guaranty Bank of Blackwell, and further alleged that when plaintiff paid the amount of the draft it did so with notice that defendant was not the owner of the draft, but held same merely for collection. Defendant further alleged that the amount it had received in payment of the draft had been by it forwarded to the Guaranty State Bank. Jurisdiction was obtained over the defendant by the garnishment of funds belonging to it in the hands of the Stockyards National Bank of Ft. Worth.

The cause was tried before the court without a jury, and judgment was rendered for plaintiff for the amount claimed, together with interest and the costs of suit, from which judgment the defendant has appealed. The court filed his findings of fact and con-

clusions of law; the facts found being in the main as heretofore stated. He found that when the plaintiff paid the defendant the amount of the draft it did so under the belief that the bill of lading was in all respects regular and genuine and that it was purchasing from the defendant the contents of the car "A T 30257," and that the car so described in the bill of lading and the one described in the draft as "A T & S F car No. 30257" were meant to be one and the same; that plaintiff acted with diligence in notifying the defendant of the forgery of the bill of lading as soon as knowledge thereof came to the plaintiff.

We believe it will be in the interest of time for us to state briefly what we understand to be the theories of the case advanced by the plaintiff and by the defendant below. Plaintiff's contention is that at the time it paid the draft, by reason of the indorsements thereon and the indorsement on the bill of lading guaranteeing all prior indorsements, defendant is shown to have owned the draft; that the forged bill of lading was not merely collateral security for the draft, but a part of the latter, because made so affirmatively by being attached thereto; that, as defendant indorsed the bill of lading, it guaranteed the genuineness thereof; and that in paying the draft plaintiff had a right to rely, and did rely, on this indorsement as evidence of the genuineness of the bill of lading.

The defendant's contention is that the evidence shows that the defendant never owned the draft, but took it only for collection, and that plaintiff had notice, by reason of the customary usage of banks as collecting agencies in matters of this kind, and by reason of the indorsements on the draft, that Tankersley owned the draft and the defendant was only a collecting agent. It further contends that the facts disclose that defendant acted in good faith throughout the entire transaction connected with the collection of the draft, and had neither knowledge nor notice that the bill of lading was forged; that the bill of lading does not purport to be drawn against the wheat described in the bill of lading, but affirmatively shows to be drawn against the funds of H. L. Tankersley & Co. by H. L. Tankersley; that by indorsing the draft and causing it and the bill of lading to be presented to plaintiff the defendant did not represent the bill of lading to be genuine; and that no other representations were made by defendant to plaintiff.

[1] We will first consider the case without reference to the effect, if any, to be given the indorsement stamped on the bill of lading by mistake of the defendant, and determine what would be the rights of the parties had no such indorsement been affixed. In 1 Daniel, Neg. Inst. (6th Ed.) § 698 d, p. 773, it is said:

"An indorsement on drafts, notes, or checks, 'Pay any bank or banker or order,' is not such an indorsement as to pass the title to the instrument. It merely authorizes any bank or banker into whose hands it might come to collect and remit the proceeds."

See, also, 8 Corpus Juris, p. 367, '§ 547 (note a), where it is said:

"The indorsement on a check by a bank which has cashed it: 'Indorsement guaranteed. Pay any national or state bank or order'—is only an indorsement for collection, and does not transfer the title to the check to the indorsee. Rolla Nat. Bank v. Salem First Nat. Bank, 141 Mo. App. 719, 125 S. W. 513."

While such an indorsee may have sufficient title to support an action in his or its own name on the draft or bill against the drawer or acceptor, yet such right to collect the draft or bill by suit does not make the indorsee liable on its subsequent indorsement, made in the furtherance of collection. 8 Corpus Juris, § 1095, p. 838; 7 Corpus Juris, § 271, p. 912. Nor is a bank, in the absence of fraud, required to proceed or exhaust its remedies against the drawee of the draft or bill before proceeding against the drawer. This was decided in the case of Chrisman v. Nat. Bank, 163 S. W. 651, cited by appellee. Also in a Missouri case, cited by appellees, to wit, Burrton State Bank v. Peasemoore Milling Co., 163 Mo. App. 135, 145 S. W. 508, the court, while sustaining the right of the collecting bank to maintain an action against the drawee of a draft, with bill of lading attached, the draft being made payable to the plaintiff bank and the drawee having notice of plaintiff's liability, having remitted directly to the broker, says:

"The great weight of authority is that the banks, in handling these bills of lading and drafts attached thereto, do not become personally responsible for the quantity or quality of the property described in the bill of lading."

In Johnston v. Schnabaum, 86 Ark. 84, 109 S. W. 1164 (17 L. R. A. [N. S.] 838, 15 Ann. Cas. 876), in speaking of the effect of that part of the indorsement reading, "Previous indorsement guaranteed," the court says:

"So far as the guaranty of the previous indorsement of Redwine is concerned, that amounted only to a guaranty of the genuineness of the indorsement, and did not render the bank liable on the note."

In 1 Daniel, Neg. Inst. § 693, p. 773, it is said:

"And an indorsement of a note, 'Previous indorsements guaranteed' amounts only to a guaranty of the genuineness of the indorsement, and does not render such an indorser liable on the note."

The word "indorsement" applies to such written entries as may be made on the back of notes, drafts, checks, etc., and may trans-fer title to paper on which it is made. 2 W. & P. p. 1049; Hendrick v. Daniel, 119 Ga. 358, 46 S. E. 439; Williams v. Osbon, 75 Ind. 280; 4 A. & E. Enc. (2d Ed.) p. 256, § 4; 7 Cyc. p. 822, § G, where it is said:

"The indorsement of a bill or note is a new contract, by which the indorser undertakes, conditional on due diligence on the part of the holder, that it shall be accepted and paid according to its tenor to the indorsee or any one who becomes a subsequent holder according to the terms of the instrument."

See, also, Bank of Indian Territory v. First Nat. Bank, 109 Mo. App. 665, 83 S. W. 537; Citizens' Trust Co. v. Ward, 195 Mo. App. 223, 190 S.W.364; Naglee v. Lyman, 14 Cal. 450, 454.

[2] From the foregoing authorities we conclude that the indorsement on the bank of the draft by the defendant of "Pay any bank or banker, all previous indorsements guaranteed," merely guaranteed the genuineness of the prior indorsements, and did not guarantee the payment of the draft, nor the existence, quality, of quantity of the wheat mentioned in the accompanying bill of lading. Plaintiff would not be entitled to recover the .money paid on the draft merely because the accompanying bill of lading proved to be a forgery. In Goetz v. Bank, 119 U. S. 551, 7 Sup. Ct. 318, 30 L. Ed. 515, it is said:

"A bank in discounting commercial paper does not guarantee the genuineness of a document attached to it as collateral security. Bills of lading attached to drafts drawn, as in the present case, are merely security for the payment of the drafts."

See, also, Blaisdell Co. v. Bank, 96 Tex. 626, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944; Hoffman v. Bank, 12 Wall. 181, 191, 20 L. Ed. 366.

Appellee cites and apparently places great reliance on the case of Landa v. Lattin, 19 Tex. Civ. App. 246, 46 S. W. 48, by the Court of Civil Appeals for the Third District. While this case is probably distinguishable from the one at bar in certain material respects, viz. that in the Landa Case the draft was made payable to the cashier of the defendant bank, which bank discounted it to the amount of the usual collection charges, while here the draft was made payable to the order of the maker, and no charges were made for collection, or otherwise, yet we think the holding in the Landa Case, so far as relied on by appellee, has been impliedly overruled by our Supreme Court in Blaisdell Co. v. Bank, 96 Tex. 626, 75 S. W. 292, 62 L. R. A. 968, 97 Am. St. Rep. 944. See, also, Hawkins v. Alfalfa Product Co., 152 Ky. 152, 153 S. W. 201, 44 L. R. A. (N. S.) 600, and Tapee v. Varley Wolter Co., 184 Mo. App. 470, 171 S. W. 19, both of which cases note the fact that the Landa Case is out of harmony with the trend of authority.

[3] An indorsement in blank of the bill of

lading itself would merely transfer the right held by the transferrer in the property therein mentioned, and an indorsement restricted to a particular person or bank would transfer such rights as the indorser held in such property to his transferee. But in neither case would such indorsement constitute a guaranty of the quantity or quality of the goods or of the fact that any such goods existed or the genuineness of the bill of lading itself. In 10 Corpus Juris, 205, § 271, it is said:

"The rights arising out of a transfer of a bill of lading correspond, not to those arising out of the indorsement of a negotiable promise for the payment of money, but to those arising out of a delivery of property itself under similar circumstances. Although it has sometimes been said that a bill of lading is negotiable, nothing more is meant by this than that the transfer of the bill of lading passes to the transferee only such right or title as the transferrer had to the goods there described."

See, also, Jones on Collateral Sec. (3d Ed.) p. 290, § 243; 10 Corpus Juris, p. 202, § 266.

Therefore the indorsement placed on the bill of lading by the defendant bank, at most, irrespective of the question of mistake, had no further effect than to guarantee the genuineness of the indorsement, and did not guarantee the genuineness of the instrument itself, that is, the signature of the agent of the railway company. The only other indorsement on the bill of lading was that of H. L. Tankersley, which was genuine, having been placed there by said Tankersley.

We conclude that the defendant bank was not liable to plaintiff, under the facts shown, for the amount of the draft paid by the latter, and that the judgment of the trial court must be reversed, and judgment here rendered for appellant; and it is so ordered.