J. H. TAPEE, Respondent, v. VARLEY-WOLTER COMPANY, Defendant; MARKET STATE BANK, Joint Defendant and Interpleader, Appellant.

Kansas City Court of Appeals, November 23, 1914.

1. **ATTACHMENTS: Justices of the Peace: Jurisdiction.** An interpleader in an action pending in a justice court was compelled to take the position of a defendant and judgment was rendered against it as the sole defendant. In its affidavit for appeal, which was from the judgment on the merits, it was not inaccurately described as the defendant, and the circuit court acquired jurisdiction over the whole case, including the issues raised by the interplea.

2. ————: **Banks and Banking: Holder for Value.** A bank by discounting negotiable paper placing same to the credit of the depositor, and honoring his checks or drafts, surrendering to him securities or in some other manner making advances and extending its credit, on the faith of such deposit, thereby becomes a holder for value. But the mere discounting and crediting of the amount on the depositor's account without making payment or incurring any increased obligations, or liabilities, is not sufficient.

3. ————: ————: ————. Where a bank pays for a draft with bill of lading attached by giving credit to the checking account of the drawer its position after acceptance by the drawee was that of an innocent holder without notice, whether or not the drawer had checks against the deposit at the time of the drawee's acceptance.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer,* Judge.

REVERSED AND REMANDED.

*Spencer & Landis* for appellant.

(1) When the defendant, Varley-Wolter Company, sold the draft with bill of lading attached to the interpleader and joint defendant, Market State Bank,

on the—day of—and the bank deposited the money for the draft to the credit of the Varley-Wolter Company, title to the car of potatoes passed to the bank as collateral security to the draft and the defendant Varley-Wolter Company, had no attachable interest in the car of potatoes. Hendley v. Globe Ref. Co., 106 Mo. App. 20; Grain Co. v. Grain Co., 171 Mo. App. 354; Boyd v. Merc. Co., 174 Mo. App. 431. (2) And it made no difference whether the bill of lading was endorsed in writing under the Law Merchant. Scharff v. Meyer, 133 Mo. 428. (3) When a bank purchases a draft with bill of lading attached, it holds the goods as collateral security for the payment of the draft and the bank does not guarantee the quantity or quality of the goods covered by the bill of lading. This is a matter between the drawer and drawee. Tolerton & Stetson Co. v. Bank, 84 N. W. 930; Lewis v. Small & Co., 96 S. W. 1051; 4 Am. Eng. Ency. (2 Ed.), 198 and 199. (4) When the plaintiff paid the draft for the goods and parted with the cash after inspection of the car, the money became the property of the Market State Bank and the plaintiff could only look to the Varley-Wolter Company for redress if there was a failure of consideration. Bank v. Milling Co., 163 Mo. App. 135.

*W. N. Linn* and *A. M. Swartz* for respondent.

(1) The evidence, as hereinbefore pointed out, clearly shows that the Market State Bank, appellant, parted with nothing at the time it purchased the draft from said commission company and that therefore said bank was not an innocent holder for value so as to defeat an action upon the warranties of the quantity and quality of the potatoes. Bank v. White, 65 Mo. App. 677; 7 Cyc. 929; First National Bank v. Willis Creek Coal Co., 110 Mich. 447, 68 N. W. 232; Bank v. Newell, 71 Wis. 309, 37 N. W. 420; Bank v. Green, 130 Iowa

384, 106 N. W. 942; Morrison v. Bank, 9 Okla. 697, 60 Pac. 273; Bank v. Mailloux, 84 Ohio 184, 95 N. E. 777; Ala. Grocery Co. v. Bank, 48 So. 340. (2) The assignee bank, purchasing the draft before maturity and parting with its funds without knowledge of the inferior quality of the goods becomes responsible to the consignee upon the warranties of the consignor. Landa v. Latin, 46 S. W. 48; Finch v. Gregg, 126 N. C. 176, 40 L. R. A. 679.

JOHNSON, J.—Plaintiff, a produce dealer in St. Joseph, brought suit by attachment in a justice court against the Varley-Wolters Company of Minneapolis, Minnesota, and had the First National Bank of St. Joseph summoned as garnishee. Afterward on motion of plaintiff the Market State Bank of Minneapolis was joined as a defendant. The ground of attachment was the nonresidence of the defendants. An attempt was made to obtain constructive service on the original defendant but at the trial in the justice court that defendant was dismissed and a judgment was rendered "that plaintiff recover from the Market State Bank of Minneapolis the sum of forty-five dollars so found as aforesaid, together with costs of this suit, and that plaintiff have execution therefor and that said execution be a special execution on the property attached in this cause." The garnishee had answered "we have $577.32 paid to us on account of draft received from the Market State Bank of Minneapolis, drawn by Varley-Wolter Co. which is claimed by above-mentioned Market State Bank as belonging to them." After the filing of this answer the Market State Bank appeared and filed an interplea in the justice court claiming title to the money held by the garnishee. In the judgment to which we have referred the justice found against the defendant bank on its interplea and as shown rendered personal judgment against it as a defendant for the full amount of plaintiff's demand. Afterward and

in proper time an affidavit for appeal was filed in which the affiant who was the agent of the appellant made oath that "defendant's application for an appeal from the merits is not made for vexation and delay," etc.

The appellant was not mentioned by name in this affidavit nor referred to as interpleader, and this omission is the subject of an objection to the jurisdiction of the court over the cause which shall receive our attention in its proper place. The cause was tried in the circuit court without the aid of a jury and judgment was rendered against both defendants for $50.21, and its was further adjudged "that the sum of $577.32 was and is in the hands of the First National Bank of Buchanan county as garnishee of the above defendants, the money and property of said defendants and it is ordered and adjudged that the said . . . garnishee pay to the clerk of this court or the sheriff of this county the said sum of $50.21, the amount of said judgment together with the costs herein," etc. Just when or in what manner the original defendant was brought back into the case is not made clear, nor is it a fact of any consequence in the view we have of the case. The Market State Bank alone appealed from this judgment and we have no concern with the question of whether or not the judgment is valid as to the original defendant.

The controversy before us grew out of the sale of a carload of potatoes by the Varley-Wolter Company to plaintiff through the agency of a broker in St. Joseph. The sale was made at $1.30 per bushel delivered on track at St. Joseph and on March 28, 1912, the car containing 530 bushels, of the gross value of $689, was shipped by the vendor at Minneapolis and consigned to its own order at St. Joseph with directions in the bill of lading to notify plaintiff and to "allow inspection." A draft was drawn by the vendor on plaintiff for $689, and with bill of lading attached, was sold to the Market State Bank for $601, the sum that

would be due the vendor after the payment at St. Joseph of the freight charges which were estimated at $88. The vendor had an account with the Market State Bank and the proceeds of the sale of the draft, to-wit, $601 was credited to its checking account. The bank purchased the draft in the usual course of business and without the knowledge of any defect or deficiency in the goods described in the attached bill of lading. It appears it was customary for the bank in such transactions to buy drafts outright from its customers for the full amount of the proceeds less the freight charges and afterward to charge the exchange and collection expenses to the customer's account. After purchasing the draft and bill of lading, the Market State Bank forwarded them to the First National Bank at St. Joseph with instructions to collect the draft and to pay the freight charges on the car out of its proceeds. In other words the collecting bank was authorized to accept the amount of the freight bill paid by plaintiff as a payment upon the draft.

The draft and bill of lading were at the St. Joseph bank on the arrival of the car. After being allowed to inspect the contents of the car plaintiff paid the draft in full, obtained the attached bill of lading and then received the property from the carrier. After removing it to his place of business he presented a claim to the vendor for damages growing out of an alleged shortgage, and of the rotten condition of some of the potatoes. The vendor rejected the claim on the grounds that it was not well founded in fact; that the title to the property had passed to the Market State Bank before the acceptance and payment of the draft by plaintiff and that the vendor had no interest in the money attached in the hands of the garnishee.

In support of the point that the circuit court acquired no jurisdiction over the cause counsel for plaintiff say in their brief: "The justice having rendered judgment against appellant as interpleader and there

being no appeal by appellant as interpleader from that judgment, the judgment of said justice against it as interpleader still remains in full force and effect." [Citing Fischer v. Anslyn, 30 Mo. App. 316; Urton v. Sherlock, 61 Mo. 257; Gray v. Dryden, 79 Mo. 106; Roberts v. Shepherd, 96 Mo. App. 698.] These are cases holding, in substance, that a judgment rendered against two or more defendants in a justice court becomes a finality against one of such defendants who fails to appeal whether or not an appeal be taken by the remaining defendants. That rule has no application to the point raised by plaintiff which, in substance, is that the circuit court acquired no jurisdiction of the issues raised by the interplea of the appellant, since the affidavit failed to describe appellant as an interpleader. The only requirements of the statute relating to affidavits for appeal in justice courts (Sec. 7570, Rev. Stat. 1909) are that "the party applying therefor, or some person for him, will make affidavit that the application for an appeal is not made for vexation or delay but because 'he believes the appellant is injured by the judgment of the justice, and stating whether such appeal is from the merits or from an order or judgment taxing costs."

It appears that the appellant was compelled in the justice court to take the dual role of defendant and interpleader, the latter voluntarily and the former by compulsion. Plaintiff had appellant joined as defendant and succeeded in procuring a personal judgment against it as the sole defendant. Certainly appellant had a right to appeal from that judgment and was accurately described in the affidavit as the defendant. The appeal from that judgment on the merits conferred complete jurisdiction upon the circuit court over the whole case including the issues raised by the interplea.

In rendering personal judgment against appellant on the facts stated, the learned trial court must have

proceeded upon the theory that the purchase of the draft with attached bill of lading which, it is undisputed, was in good faith for a valuable consideration, did not confer upon appellant the rights of an innocent purchaser for value of a negotiable instrument but rendered it liable as the assignee of the vendor to the vendee for damages resulting to the latter from the vendor's breach of contract.

A rule in many jurisdictions invoked by plaintiff is that where a bank discounts a draft in advance of its acceptance it is not a *bona fide* holder for value unless it has funds in its hands which it releases or fails to withhold from the drawer before its acceptance, and the mere fact that the bank gives the deposit account of the drawer credit for the purchase price of the draft will not establish a higher relationship than that of debtor and creditor in instances where the drawer does not withdraw such proceeds before the acceptance of the draft. As is said in 7 Cyc. 929, "A bank by discounting negotiable paper placing the same to the credit of the depositor, and honoring his checks or drafts, surrendering to him securities, or in some other manner making advances and extending its credit, on the faith of such deposit, thereby becomes a holder for value. But the mere discounting and crediting of the amount on the depositor's account without making payment or incurring any increased obligations, or liabilities, is not sufficient." [See, also, Bank v. Coal Co., 110 Mich. 447; Bank v. Newell, 71 Wis. 309; Bank v. Green, 130 Ia. 384; Morrison v. Bank, 9 Okla. 697; Bank v. Mailloux, 84 Ohio, 184; Bank v. Reyburn, 163 Fed. 597.]

But the general rule, as we shall show, is not applied in instances such as the present where the purchase by the bank is a draft with bill of lading attached. Nor does the rule we announced in Bank v. White, 65 Mo. App. 677, control the disposition of the case. In that case a consignee of lumber to be sold

on commission discovered after paying the freight that the lumber was of inferior quality and refused to accept a draft for the purchase price attached to the bill of lading which had been assigned to a bank which made an advance to the consignor on the faith of such bill of lading. In an action by the bank founded on the claim that it was a purchaser for value, we held that the consignee of the lumber "was left with the same defenses as against plaintiff bank that he would have as against the lumber company," on the theory that "the assignment of the bill of lading operated as a symbolical delivery of the property covered by it," and thenceforth the assignee "occupied the same relation toward the property then in transit that the lumber company did before the bill of lading was transferred." The effect on the transaction of the negotiability of bills of lading under the statute (Sec. 11956, Rev. Stat. 1909) was not discussed, but we do not find it necessary or expedient at this time to inquire into the soundness of that decision, since the rule it announces has no application to the present state of case which is vitally different from that we had before us then. It may be conceded, *arguendo,* that where delivery of the property is made to the consignee without his acceptance of a draft drawn by his vendor for the purchase price, the assignee of such draft acquires no greater rights against him than those possessed by the assignor at the time of the assignment, and in a subsequent action to collect the draft the assignee may be successfully confronted with such defenses as the consignee could have interposed in a suit for the purchase price prosecuted by the assignor.

In the present case delivery of the property was obtained by the consignee after and in virtue of his acceptance and payment of the draft and the cause of action asserted by the consignee against the assignee of the draft is grounded not alone upon the theory that the assignee was not in the position of an innocent

purchaser for value of a negotiable bill of exchange, but in legal contemplation became an intermediate purchaser of the goods and, as such, became liable to respond in damages to the consignee for defects in them to the same extent that the assignor would be liable.

This position is not without the support of reported decisions in other jurisdictions (Landa v. Lattin (Tex.), 46 S. W. 48; Finch v. Gregg, 126 N. C. 176, 49 L. R. A. 679) but the weight of authority and the better reasons are opposed to the doctrine of those cases.

In the case of Goetz v. Bank, 119 U. S. 551, the Supreme Court of the United States hold that in discounting commercial paper a bank does not guarantee the genuineness of a document attached to it as collateral security and, of course, does not assume liability for the performance by the drawer of the contract of sale with his consignee, evidenced by the attached collateral. ''Bills of lading,'' say the court, ''attached to such drafts are merely security for the payment of the drafts, and their attachment imported nothing more than that the goods, which the bills of lading stated had been shipped, were to be held for the payment of the drafts, if the drafts were not paid by the drawees, and that the bank transferred them only for that purpose. If the drafts were paid the drawees were to take the goods. To hold such indorsement to be a warranty would create great embarrassment in the use of bills of lading as collateral to commercial paper.''

The Supreme Court of Iowa in Tolerton v. Bank, 84 N. W. 931, held ''it is a well-established rule of law that after the holder of a negotiable draft with bill of lading attached has secured an acceptance of such draft from the drawee and consignee, he is unaffected by any equities originally existing between such consignee and the seller of the goods. In such a case the liability of the drawee becomes fixed to the payee.''

Speaking of the Texas and North Carolina cases the court well say: ''These decisions proceed upon the theory that the assignee stands in all respects in the shoes of the assignor and to this broad doctrine we cannot agree. While the rights of such an assignee are to be measured by those of the assignor, his liability is not necessarily the same,'' a well-drawn distinction which very clearly differentiates the case we considered in Bank v. White, supra, from the one in hand.

The Supreme Court of Tennessee in an exhaustive and convincing opinion (Leonhardt v. Small, 96 S. W. 1051) likewise repudiate the Texas and North Carolina doctrine and hold that after payment by the drawee and consignee of a draft with bill of lading attached, a bank which purchased the draft from the drawer is not liable to the consignee for the frauds or delinquencies of the drawer in the performance of his contract with the consignee. The court pertinently observes: ''It is a fact of common knowledge that a large part of the commercial business of the country is carried on through the medium of drafts, and that the immense crops of the South and West are marketed under contracts to draw for the purchase price with bills of lading attached. If the courts shall adopt the rule insisted upon by the complainants, and enforced by the decree of the court of chancery appeals, it will result in destroying this convenient method of handling, moving, and paying for the crops of the country, for the banks will necessarily be compelled to refuse to buy drafts with bills of lading attached, or to handle them as collateral security or otherwise. Banks have neither the time nor the facilities to investigate the genuineness of bills of lading, or the contracts made between their customers with parties residing in other States, and to hold them responsible for the frauds and mistakes of shippers would utterly destroy

the negotiability of drafts with bills of lading attached."

Other authorities of similar import are referred to in the cases we have reviewed and in notes to the case of Finch v. Gregg, supra, in 49 L. R. A. 679. Recently in Bank v. Milling Co., 163 Mo. App. 135, the Springfield Court of Appeals, speaking through GRAY, J., held to the doctrine of the nonliability of the purchasing bank in such cases, and held that where the bank paid for the draft by giving credit to the checking account of the drawer its position after acceptance by the drawee was that of an innocent holder without notice, whether or not the drawer had checked against the deposit at the time of the drawee's acceptance.

We are satisfied with the soundness of this view, for the reasons stated in the excerpt we have copied from the opinion in Leonhardt v. Small, supra. The status of the purchasing bank should not be made to depend upon the fortuitous circumstance of the assignor checking against the proceeds deposited to his credit before the acceptance of the draft. The necessities and legitimate purposes of trade would seem to demand the rule which gives requisite certainty and stability to the position of banks which in good faith purchase commercial paper with bills of lading attached, in the laudable endeavor to facilitate the distribution of the products of labor through the channels of trade and commerce.

The learned trial judge erred in holding the bank personally liable for the alleged default of its assignor and in refusing to enter judgment in its favor for the full amount of the proceeds of the draft in the hands of the garnishee. The judgment is reversed and the cause remanded.

All concur.