### AMERICAN STATE BANK OF OMAHA, NEB., v. MUELLER GRAIN CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1926.)

No. 3433.

**I. Trial ⟨⟩420—Defendant's motion for directed verdict at close of plaintiff's case held not waived by defendant's subsequent recalling of plaintiff's witness.**

Defendant's motion for directed verdict at close of plaintiff's evidence was not waived by defendant's subsequent recalling of plaintiff's witness, whose testimony was immaterial, where defendant at all times denied liability, and record showed that legal question involved was intended to be preserved for review by appellate court.

**2. Carriers ⟨⟩59—One paying drafts held entitled to rely on indorsements on bills of lading attached thereto, indorser's obligations being question of law.**

One paying drafts accompanied by bills of lading *held* entitled to rely on indorsements on bills of lading, in absence of proof of knowledge of purpose of indorsement guaranteeing prior indorsements, and obligation of indorser thereunder was question of law.

**3. Carriers ⊜⇒58—Payee bank, indorsing bills of lading accompanying drafts, held not a "negotiator" of bills of lading (Bills of Lading Act, § 34 [Comp. St. 8604qq]).**

Payee bank, which credited drawer of drafts with proceeds and indorsed accompanying bills of lading by indorsement guaranteeing prior indorsements, *held* not a "negotiator" of bills of lading, within Bills of Lading Act, § 34 (Comp. St. § 8604qq), and there was no implied warranty.

**4. Carriers ⊜⇒58—Indorsement on bills of lading accompanying drafts held to show indorser did not warrant anything by negotiating bills of lading (Bills of Lading Act, § 34 [Comp. St. § 8604qq]).**

Indorsement of payee bank on bills of lading accompanying drafts, reciting that bank did not guarantee genuineness of bills of lading, and that it was not responsible for quantity, quality, condition, or delivery of goods described therein, expressed bank's "contrary intention," within Bills of Lading Act, § 34 (Comp. St. § 8604qq), and bank did not, by negotiating bills, warrant anything.

**5. Carriers ⊜⇒58—Payee bank, indorsing bills of lading accompanying drafts, held at most a "pledgee," and did not warrant genuineness of bills (Bills of Lading Act, § 36 [Comp. St. § 8604rr]).**

Payee bank, which credited drawer of drafts with proceeds and indorsed accompanying bills of lading, by indorsement guaranteeing prior indorsements, *held* at most a "pledgee," within Bills of Lading Act, § 36 (Comp. St. § 8604rr), and did not warrant genuineness of bills of lading.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner.]

**6. Forgery ⊜⇒9—To constitute "forgery," signature must have been wrongfully made by other than person whose signature it purports to be.**

Charge of "forgery" of signature must be sustained by proof that signature was not made by hand of person whose signature it purports to be, and that it was made by another wrongfully.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forgery.]

**7. Forgery ⊜⇒8—Proof that indorsement of consignee's name on bills of lading was written by person signing consignor's name held not to show forgery, where consignee was fictitious person.**

Proof that name appearing as consignee's indorsement on bills of lading attached to drafts was written by same hand that signed consignor's name *held* not to sustain charge that consignee's name was forgery, in view of evidence that consignee was fictitious person, and that consignor used such name for his own purposes.

**8. Carriers ⊜⇒58—Evidence held to show that loss to one paying drafts attached to bills of lading was not due to forgery of indorsement on bills, but to spuriousness of bills.**

Evidence *held* to show that goods covered by bills of lading accompanying drafts paid by plain-

tiff were not lost to plaintiff because of forgery of consignee's indorsement, but because bills of lading were spurious, in that goods were never shipped.

**9. Carriers ⊜⇒59—Indorsements calling for payment on bills of lading held sufficient to put drawee of drafts on inquiry as to their genuineness.**

Indorsements calling for payment to order of any bank, and guaranteeing all prior indorsements on bills of lading, which called for delivery of property, *held* sufficient to put drawee of drafts attached thereto on inquiry as to why such indorsements appeared thereon.

**10. Carriers ⊜⇒58—Under indorsement guaranteeing genuineness of prior indorsements on bills of lading, indorser held at most to guarantee only genuineness of prior indorsements, and not of bills.**

Where bank, by indorsement on bills of lading guaranteed genuineness of prior indorsements, below which it stamped notice that it did not guarantee genuineness of bills of lading, and that it was not responsible for quantity, quality, condition, or delivery of goods described therein, *held* at most to make it liable only for genuineness of prior indorsements, and not for genuineness of bills of lading.

**11. Carriers ⊜⇒58—Drawee, paying drafts accompanied by forged bills of lading, held not entitled to recover from prior indorser on theory of payment under mistake of fact.**

Drawee, paying drafts accompanied by forged bills of lading, *held* not entitled to recover from prior indorser on theory that, because neither party knew of forgery, money was paid under mistake of fact, in absence of showing that draft was illegal, or of indorser's knowledge of prior equities.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Mueller Grain Company against the American State Bank of Omaha, Neb. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Certiorari granted 271 U. S. 658, 46 S. Ct. 633, 70 L. Ed. ——.

Theodore E. Rein, of Chicago, Ill., for plaintiff in error.

Walter H. Moses, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. From June to August 16, 1917, defendant in error, called plaintiff, at Peoria, sold grain on commission for one Richter, doing business as United States Commission Company, Omaha, Neb. Uniform order bills of lading were attached to drafts, drawn for an arbitrary amount, by Richter on plaintiff, in favor of plaintiff in error, called defendant, an Oma-

ha bank. Defendant gave credit to Richter for the drafts, and they were sent through the regular course of banking for collection and were paid by plaintiff at Peoria. Two such drafts were accompanied by bills of lading consigning grain to the order of A. L. Johnson, Peoria, "notify U. S. Commission Co." On each of the bills of lading was indorsed:

"A. L. Johnson."

"U. S. Commission Co., William R. Richter."

"Pay to the order of any bank or banker, all prior endorsements guaranteed, July 18, 1917. American State Bank 27–61 Omaha 27–61 Neb. L. M. Swindler, Cashier."

"Notice. We hereby give notice to all parties concerned that this bank does not guarantee that this bill of lading is genuine and will not be responsible for the quantity, quality, condition, or delivery of the goods described therein. American State Bank, Omaha, Neb."

The first indorsement by the bank will be called the guaranty and the other the notice. Both indorsements were by rubber stamp. The guaranty was regularly used in the indorsement of checks, drafts, and notes, and the evidence shows that it appeared sometimes on bills of lading.

Plaintiff sought to recover on several grounds: (a) That the bills of lading were not genuine, but it contends that there was no evidence to support that claim; (b) that defendant guaranteed the genuineness of the indorsements on the bills of lading and that the indorsement, "A. L. Johnson," was a forgery; (c) that, because the signature of Johnson was a forgery, of which both parties were ignorant, the plaintiff should recover as for money paid under a mistake of fact.

Upon defendant's motion, at the close of plaintiff's case, for a directed verdict, the record shows the following:

"The Court: I presume that you want to argue this motion? (Argument.)

"The Court: Well, let us get the witness. Call him. Do you want the jury here?

"Mr. Bachrach: No.

"The Court: I think this is a case to be decided by the court; no matter how I decide it, it has got to go upstairs (meaning to the Circuit Court of Appeals).

"Mr. Rein: I think so.

"The Court: It need not be complicated by any instructions to the jury.

"Mr. Bachrach: That is agreeable to us.

"The Court: You can file your waiver of the jury later. (Whereupon the further proceedings were had before the court, the jury

having been waived.) Thereupon the defendant, to maintain the issues on its part, introduced the following evidence, to wit."

The witness, thus called, testified only to the use of the guaranty stamp on the bills of lading. The plaintiff called a witness, whose testimony was rejected by the court, after which an adjournment was had. Upon the reconvening of court, the record shows the following:

"The Court: The whole thing resolves itself right into this: What did the rubber stamp mean? It is on the document. Two innocent persons have lost their money. Now, who must suffer? Who is the least innocent of the two? I think that the words, 'Pay to any bank or banker,' might easily be construed to mean, 'Deliver to any bank or banker.' The mere fact that no bank has indorsed it does not change the legal situation at all. It was presented to a bank in Chicago, presented by that bank to another bank in Peoria, and presented by that bank to Mueller. Mueller took it at its face value, with certain things on the bill of lading, printed in, stamped on. He had a right to consider the whole thing. I shall make a finding in this case for the plaintiff, with some misgivings, I tell you frankly.

"Mr. Rein: If the court please, may it be stipulated that the plaintiff and the defendant may submit propositions of law to be passed on by the court?

"The Court: We never have had them in the federal court. You may show that both sides offered them and the court refused to consider them.

"Mr. Rein: That is all right.

"The Court: The Circuit Court of Appeals has held that the federal courts do not have to subject themselves to examination at the hands of counsel. They do not follow the state procedure.

"Mr. Rein: I didn't know that.

"Mr. Bachrach: The amount of the claim, if the court please, with interest, is $6,490.46.

"The Court: That will be the amount of my finding, Mr. Clerk, with an exception on the part of the defense. (To which ruling of the court, the defendant, by its counsel, then and there duly excepted.)

"Mr. Rein: Yes; with motion for new trial.

"The Court: Yes; that is unnecessary. But go ahead. (Motion for new trial overruled; exception. To which ruling of·the court the defendant, by its counsel, then and there duly excepted.)"

During the trial, the court made the following order: "The reporter will preserve

an exception to every ruling of the court, whether counsel ask for it or not."

At the close of plaintiff's case, the court suggested that the only question was one of law, and that, however it was decided, the defeated party would want to have it reviewed in this court. It is evident from the record that both parties intended to preserve that legal question for review. Yet, if plaintiff's contentions are true, the waiving of the jury and that which followed excluded every possibility of having that legal question reviewed by any court. Those matters present very strong equities in favor of the defeated party. In Liberty Oil Co. v. Condon Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, the Supreme Court said:

"Under section 269 of the Judicial Code, as amended by the Act of February 26, 1919, c. 48, 40 Stat. 1181 [Comp. St. § 1246], appellate courts are enjoined to give judgment, after an examination of the record, without regard to technical errors, defects, or exceptions, which do not affect the substantial rights of the parties."

The 17 counts of the declaration in this case, by leaving out some of the exhibits, cover no less than 75 pages. Defendant pleaded the general issue, and set up the nature of its defenses by affidavit, and stated much immaterial matter and many conclusions. Nevertheless, plaintiff's claim, if it has one based on the guaranty, must be bottomed upon the proposition that plaintiff lost two cars of grain because of the forgery of the name Johnson upon the bills of lading, guaranteed by defendant to be genuine, and the proof could have been made under one paragraph of the consolidated common counts. When the plaintiff introduced in evidence the bills of lading, with the indorsements, and had shown payment of the drafts, its case was made out so far as it could be, except as to two matters, viz. the forgery of the Johnson name and the loss of the grain by reason thereof.

On the trial, much of the evidence was incompetent and immaterial, and in many instances prejudicial. A witness was asked:

"Q. Mr. Swindler, was the bank in good condition when you left it? A. Yes, sir."

Again:

"Q. Mr. Swindler, what was the course of business in July, 1917, of the American State Bank of Omaha in regard to putting these stamps, which I have just showed you, on the bills of lading which went through the American State Bank" (the stamps being the guaranty and the notice). A. Why, they seem to have been put there."

And, again:

"Q. Was that the general course of business? A. Yes; I think it was."

The witness Fred Mueller was asked about the nature of the business with Richter, and then:

"Q. State in a general way the nature of these transactions. You say that it was consigned on commission; state the nature of the transaction in each instance. A. Well, they shipped us corn, and made a draft on us, the draft to be presented with the bill of lading attached by Peoria banks at our office. We examine the draft and the bill of lading, see that it is properly indorsed, and we look back at the bills of lading, to see if they were indorsed by the bank of Omaha."

The witness Heyl testified about a visit to defendant's bank, in which he said:

"I told Mr. Shafer that it appeared from the facts that I had that there was no such person as A. L. Johnson, and that the name was a forgery, and that the instrument was spurious, and that he had lost by reason of a reliance upon the indorsement of the American State Bank of Omaha," etc.

A motion to strike out such parts of the witness' testimony, in which he told Shafer that the signature of Johnson was forged, etc., as being purely self-serving, was overruled. There were a number of inquiries as to whether plaintiff had received the grain called for in the bills of lading, all of which were permitted to be answered over objection, and then Mueller was asked:

"Q. What, if anything, was done by you for the Mueller Grain Company to obtain possession of the corn described in the bills of lading? A. Started tracer after those two cars, and finally wired the agent at the stations where they were supposed to be loaded, wired them to see if they ever left there, and he said never were loaded, and no record of them."

Whatever use was made of the guaranty stamp, it nevertheless appears beyond question that it was ordered for the purpose of indorsing drafts and bills of exchange, and not for the purpose of indorsing bills of lading. There was a controversy between Steinert and the president of the bank as to the wording of the guaranty. The controversy had nothing to do with the use of the guaranty stamp upon bills of lading. The following was admitted in evidence:

"Q. What did Mr. Swindler say to you when you said this ought not to be in the stamp? What were his exact words? I think you ought to remember them, don't you? You repeated them to me once. A.

He said he was going to order the stamp that way, and he wanted it in there.

"Q. Didn't he say, 'God damn it, Mr. Steinert, I ordered it that way, and it is going to stay that way?'

"Mr. Rein: I don't see what that has got to do with this case at all.

"Mr. Beilenson: I want to show that Swindler had his attention especially called to this, your honor.

"The Court: Oh, I presume that the profanity is put in for emphasis. Profanity has been described, and well described, as the avenue of ignorance toward strong expression. Now, if you want it for emphasis, you may put it in.

"Mr. Beilenson: I want to know what Mr. Swindler said. Isn't that what he said?

"Mr. Rein: I object to that as not being touched at all on direct examination, not being proper cross-examination.

"The Court: He may answer.

"A. I believe he did."

There is much more in the record of like import, that does not tend in any way to support any issue in the case.

[1, 2] There was a motion for a directed verdict at the close of plaintiff's evidence. That, if not waived by subsequently calling the witness Steinert for the defendant, is available here. We are of opinion that it was not waived because:

(a) The evidence related solely to the purpose and use of the guaranty stamp. In the absence of proof to show that the plaintiff had notice or knowledge of such purpose or use, and there is none in the record, plaintiff was entitled to rely upon the indorsements for what they were worth as they appeared upon the bills of lading, and defendant's obligation thereunder was a question of law. Steinert's evidence was not only immaterial, but it did not change the situation as shown at the close of plaintiff's case.

(b) Defendant at all times stoutly contended that there was no legal liability. Though the record shows that Steinert was called by the defendant, it also shows that he had earlier testified for the plaintiff and was really a recalled witness. It also shows that, during or at the close of the argument upon the motion to direct a verdict, he was put upon the stand by direction of the court in a manner that indicates, not that the court was overruling the motion for a directed verdict, but rather that the decision thereon was postponed until after the court had heard that witness. After the Steinert testimony, plaintiff called a witness who was not permitted to testify. The parties had stipulated the amount of the damages, if the finding was for the plaintiff, and there was only a question of law, upon the uncontroverted facts, at the time the court suggested, "I think this is a case to be decided by the court," and that suggestion seems to have induced the waiving of a jury. Unquestionably the court and both parties intended that the legal question should be preserved for hearing in this court. There was no ruling upon that motion, unless it was in the final decision of the court, "I shall make a finding in this case for the plaintiff."

In Grand Trunk Ry. Co. v. Cummings, 106 U. S. 700, 1 S. Ct. 493, 27 L. Ed. 266, speaking of a motion made by defendant at the close of plaintiff's testimony, the court said:

"If he goes on with his defense, and puts in testimony of his own, and the jury, under proper instructions, finds against him on the whole evidence, the judgment cannot be reversed, *in the absence of the defendant's testimony,* on account of the original refusal, even though it would not have been wrong to give the instruction at the time it was asked." (Italics ours.)

In Lydia Cotton Mills v. Prairie Cotton Co. (4th C. C. A.) 156 F. 225, the court said:

"The reason for the principle laid down in the case last cited" (Grand Trunk) "is readily apparent: That although the testimony offered by plaintiff may not, in itself, have been sufficient to warrant a verdict, yet the court was entitled to see what effect the testimony of defendant, subsequently offered, may have had upon the issues involved, for it frequently occurs in the trial of causes that the testimony of the defendant, upon cross-examination of witnesses or disclosures otherwise made, has the tendency to strengthen rather than weaken plaintiff's case. It was therefore important that the defendant's testimony should be set out in the record, that the court might see and determine, upon all of the testimony, as to whether or not the case should have gone to the jury."

The court held that the defendant might have assigned for error the overruling of a motion to dismiss, made at the close of the plaintiff's evidence, under the circumstances there shown. In Lancaster v. Foster (5th C. C. A.) 260 F. 5, the court held that an exception to the denial of the motion for a directed verdict, made at the close of plaintiff's case, is not waived by defendant by subsequent introduction of evidence, where such evidence is all in the record and contains nothing

which strengthens plaintiff's case. Petition for certiorari was denied in that case.

[3-5] It is urged that defendant was the negotiator of the bills of lading and that there was an implied warranty by it within the meaning of section 34 of the Bills of Lading Act (Comp. St. § 8604qq). We are of opinion that (a) defendant was not a negotiator, within the meaning of that section; (b) if it was, by the notice indorsed upon the bills of lading, the bank expressed its "contrary intention," within the meaning of that section, and did not by negotiating the bills warrant anything; (c) that defendant was, at most, a pledgee of the bills of lading within the meaning of section 36, and for that reason was not a warrantor under the statute. 39 Stat. at Large, pp. 543, 544 (Comp. St. § 8604rr).

[6, 7] To sustain the charge of forgery of the Johnson name, plaintiff relies upon the evidence that the same hand that wrote the Richter signature wrote the name Johnson on the bills of lading, and cites the following cases: Schroeder v. Harvey, 75 Ill. 638; Wizard Oil Co. v. U. 'S. Express Co., 265 Ill. 156, 106 N. E. 623; Foster v. Graf, 287 Ill. 559, 122 N.E. 845—to support their contention that that evidence was sufficient to show the forgery. Every charge of forgery of a signature and every definition of such a forgery must necessarily contain the elements (a) that the signature was not made by the hand of the person whose signature it purports to be; ' (b) that it was made by another wrongfully. Unless there is evidence in the record that the whole of the bills of lading, including the Johnson indorsement, are forgeries, the record is wholly without evidence that the name Johnson was forged. There is some evidence that there was no such person as Johnson, and that Richter used the name for his own purposes, which, without more, he might legally do, the same as he used the name United States Commission Company. Plaintiff contends that there is no evidence of forgery of the bills of lading.

[8] Upon the question as to what caused the loss of the grain to the plaintiff, witness Heyl testified that it appeared from the evidence that there was no such person as A. L. Johnson, that that name was a forgery, and that the instrument, the bill of lading, was spurious. So far as the record shows, the only explanation of why plaintiff did not get the grain is to be found in the testimony of Heyl and in the following testimony of Mueller, plaintiff's secretary and treasurer, viz.:

"We started tracer after those two cars, and finally wired the agent at the stations where they were supposed to be loaded, and he said never were loaded and no record of them."

This evidence does not show that the grain was lost to plaintiff because of any forged indorsement of the Johnson name, but, on the contrary, tends to show that the bills of lading themselves were spurious.

[9] We are of opinion that the guaranty, which called for a payment, appearing upon the back of an instrument that called for no payment, but for a delivery of property, was sufficient to put plaintiff upon inquiry as to why such indorsement appeared upon such an instrument.

[10] The record shows that defendant put, not only the guaranty, but also the notice, upon the bills of lading, and, if there was nothing in the guaranty to put plaintiff upon inquiry, yet the two indorsements must be read together. The guaranty not only did not on its face guarantee the genuineness of the bills of lading, but the notice specifically said, "This bank does not guarantee that this bill of lading is genuine." The notice also excluded any idea of responsibility for the quantity, quality, condition, or delivery of the grain, so that, if there was any guaranty at all, it was merely that the Johnson signature was genuine, and defendant could only be held liable for any loss occasioned by its forgery. Johnson, if he existed and his name had been forged, would have been a very material witness for the plaintiff. Plaintiff charged that his name was forged, yet it did not call him as a witness, nor in any way account for his absence, except that Heyl said:

"I told Mr. Shafer that it appeared from the evidence that I had that there was no such person as Johnson."

If, then, the bills of lading were spurious, and Johnson was a fictitious person, it conclusively follows that there was no loss of the grain because the signature of Johnson was not genuine.

[11] Plaintiff seeks to recover on the theory that, as both it and the defendant were ignorant of the forgery of the Johnson name, the money was paid by it under a mistake of fact. In Bartlett v. First Nat. Bank, 247 Ill. 490, 498, 93 N. E. 337, 340, cited by plaintiff, is laid down the rule:

"When one of two innocent parties must suffer loss by reason of the wrongful acts of a third party, the rule is almost universal that the party who has made it possible, by reason of his negligence, for the third party to commit the wrong, must stand the loss."

No fault can be found with the rule laid down in that case and numerous other cases upon that point cited by plaintiff, among which is American Hominy Co. v. Milligan Nat. Bank (D. C.) 273 F. 550, 558. Those cases are not in point here, because they arose upon checks or bills of exchange, and negligence of defendant in each case was shown. This case arises upon bills of lading, no negligence is shown, and, if plaintiff waives the alleged guaranty, a wholly different question is presented.

Plaintiff seeks to sustain a recovery on the theory laid down in Leather Mfrs. Bank v. Merchants' Bank, 128 U. S. 26, 9 S. Ct. 3, 32 L. Ed. 342. The only question there under discussion was as to when the statute of limitations commenced to run, but that case pertained to a bill of exchange, and a bill of lading was in no way involved. The theory upon which plaintiff there was entitled to recover is that one who presents a forged paper, and procures payments thereof, in law represents that the paper is genuine, and, because it is not genuine, there is never, at any stage of the transaction, any consideration for the payment. In that case the forgery was proven. In the instant case the drafts that were paid by plaintiff made no reference to the bills of lading.

The Supreme Court, in Hoffman v. Bank of Milwaukee, 12 Wall. 181, 189 (20 L. Ed. 366), said:

"Money paid under a mistake of facts, it is said, may be recovered back as having been paid without consideration."

Then the court said that which is directly applicable here:

"The decisive answer to that suggestion, as applied to the case before the court, is that money paid, as in this case, by the acceptor of a bill of exchange, to the payee of the same, or to a subsequent indorsee, in discharge of his legal obligation as such, is not a payment by mistake, nor without consideration, unless it be shown that the instrument was fraudulent in its inception, or that the consideration was illegal, or that the facts and circumstances which impeach the transaction, as between the acceptor and the drawer, were known to the payee or subsequent indorsee at the time he became the holder of the instrument."

There is no contention here that the bill of exchange was not legal. The court further said:

"Such an instrument, as between the payee and the acceptor, imports a sufficient consideration, and in a suit by the former against the latter the defense of prior equities, as between the acceptor and the drawer, is not open unless it be shown that the payee, at the time he became the holder of the instrument, had knowledge of those facts and circumstances."

There is no claim that the defendant here had any such knowledge. There was in that case, as here, the claim that plaintiff had paid the bills of exchange upon the faith and security of the bills of lading. The court said:

"It is not perceived that the concession, if made, would benefit the plaintiffs, as the bills of exchange are in the usual form, and contain no reference whatever to the bills of lading, and it is not pretended that the defendants had any knowledge or intimation that the bills of lading were not genuine, nor is it pretended that they made any representation upon the subject to induce the plaintiffs to contract any such liability. * * * Beyond doubt, the bills of lading gave some credit to the bills of exchange beyond what was created by the pecuniary standing of the parties to the same; but it is clear that they are not a part of those instruments, nor are they referred to either in the body of the bills or in the acceptance, and they cannot be regarded in any more favorable light for the plaintiffs than as collateral security accompanying the bills of exchange."

That case was discussed at considerable length, and approved in Goetz v. Bank of Kansas City, 119 U. S. 551, 7 S. Ct. 318, 30 L. Ed. 515, and both cases are cited by plaintiff. See, also, Tapee v. Varley-Wolter Co., 184 Mo. App. 470, 171 S. W. 19, 22. The Court of Appeals of New York, in Spring v. Hanover Nat. Bank, 209 N. Y. 224, 103 N. E. 156, discussed the question of the right of recovery by one who had paid a draft accompanied by a forged bill of lading, and affirmed a directed verdict for defendant. The Hoffman and Goetz Cases are reviewed, and extensive quotations made from · First Nat. Bank v. Burkham, 32 Mich. 328, where the opinion, rendered by Judge Cooley, goes at much length into a consideration of the question of the right of recovery of money by one who has paid a bill of exchange, accompanied by a forged bill of lading, and we are of opinion that that case is controlling here.

The judgment is reversed, and cause remanded, for proceedings in harmony herewith.