## MARYLAND CASUALTY CO. v. JONES.

Circuit Court of Appeals, Ninth Circuit.
November 4, 1929.

Rehearing Denied December 9, 1929.

No. 5366.

See, also, 27 F.(2d) 521; 49 S. Ct. 484.

John Ralph Wilson and W. G. Bonta, both of San Francisco, Cal., for plaintiff in error.

Nat Schmulowitz and Ernest L. Brune, both of San Francisco, Cal., for defendant in error.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This was an action at law against a surety company on a bond of indemnity. The action was tried by the court without the intervention of a jury, by written stipulation of the parties. As is usually the case, the action presented or involved two questions: First, the question of liability; and, second, the extent or amount of that liability. At the close of the testimony offered by both parties, the surety company interposed a so-called motion for nonsuit on five different grounds. The third ground of the motion was that there was no evidence of any wrongful abstraction, wrongful misapplication, or other improper use of moneys, save the testimony of an expert whose testimony was based on information received by him and on his interpretation of the written contract between the parties. The motion was denied by the court, and the case was referred to the United States commissioner as special master, for the purpose of taking testimony, stating an account, making findings thereon, and reporting the same to the court. To this ruling an exception was taken and allowed. Further testimony was

thereafter offered by both parties before the special master, and at the conclusion of the hearing before him he reported his findings to the court as directed. Upon the testimony offered prior to the reference and upon the report of the special master and the testimony taken before him, the court made elaborate special findings of fact covering every issue in the case, and, as stated in our former opinion, these special findings were not excepted to, nor was their sufficiency to support the judgment called in question. Upon these special findings a judgment was entered in favor of the plaintiff, from which the surety company has sued out the present writ of error.

The assignments of error accompanying the petition for the writ were 22 in number, but these assignments were in a large measure disregarded or abandoned in the specifications of error contained in the brief of the plaintiff in error. The latter contains 8 specifications only. The first 6 were based on the findings of the court, the seventh alleged error in rendering judgment against the defendant for the reason that the evidence affirmatively showed that the principal named in the bond was permitted by the plaintiff to perform the terms of the lease agreement after he had committed a breach on his part, with full knowledge of the plaintiff and without any knowledge of the defendant, and the last specification challenged the sufficiency of the evidence to support the judgment that the principal on the bond had misapplied money as shown by the judgment.

On a former hearing this court held that it could not consider the sufficiency of the testimony to support the special findings, where the special findings were not excepted to and there was no request for other or different findings. In other words, we held that the only question open for review was the sufficiency of the special findings to support the judgment, and, inasmuch as their sufficiency in that regard was not called in question, the judgment was affirmed. Maryland Casualty Co. v. Jones (C. C. A.) 27 F.(2d) 521. A writ of certiorari was granted by the Supreme Court and the case remanded to this court, "with instructions to consider the several assignments of error relating to the rulings of the trial court in the progress of the trial, and—unless they have been waived—take further proceedings in regard thereto." Maryland Casualty Co. v. Jones, 279 U. S. 792, 49 S. Ct. 484, 485, 73 L. Ed. 960. In reaching this conclusion, the Supreme Court considered only the assignments of error contained in the record, and refused to consider the specifications of error contained in the brief, on the ground that the brief was no part of the record. As a result, it becomes at once apparent that in reaching its conclusion this court considered only the errors specified in the brief, while the Supreme Court considered only the assignments of error contained in the record.

The rules of this court provide that the appellant or plaintiff in error shall file a brief containing, among other things, a concise abstract or statement of the case and a specification of the errors relied on. This rule is common to all appellate courts, and, so far as we are advised, such courts do not go beyond the errors thus specified, unless they depart from the rule to correct a plain error not assigned. The only contention ever made in this case by the plaintiff in error, by brief or otherwise, was the single one that the testimony was not sufficient to support the findings and judgment. This question, of course, is not open to review in an appellate federal court in actions at law, unless the question was specifically raised in the court below, and a ruling had thereon, and an exception taken. Fleischmann Co. v. United States, 270 U. S. 349, 46 S. Ct. 284, 70 L. Ed. 624. The brief in this case makes no reference whatever to any such ruling by the court below; nor is any such ruling assigned as error. Furthermore, the only challenge of any kind to the testimony is found in the so-called motion for nonsuit, which was interposed and overruled in the midst of the trial. And if this be deemed a sufficient challenge, both parties thereafter offered testimony, and this, of course, was a waiver of any error in the ruling complained of. So strictly has this rule been adhered to that, when the Circuit Court of Appeals for the Seventh Circuit held, in American State Bank v. Mueller Grain Co., 15 F.(2d) 899, that a motion for a directed verdict by a defendant at the close of the testimony offered by the plaintiff was not waived by the defendant subsequently recalling a witness for the plaintiff, whose testimony was immaterial, the Supreme Court reversed the judgment, without an opinion. Mueller Grain Co. v. American State Bank of Omaha, Nebraska, 275 U. S. 493, 48 S. Ct. 34, 72 L. Ed. 390. We must adhere, therefore, to the views heretofore expressed that the question of the sufficiency of the evidence to support the findings and judgment is not properly before us for review.

But, to end all further controversy, we may add that a consideration of the merits of the case leads to the same conclusion. On August 22, 1923, the defendant in error Jones and one Elizabeth A. Rodgers, as first parties, and one Akers, as second party, entered.

into an agreement, which was divided into three parts. The first part was a lease, by the first parties to the second party, of a large quantity of real property and a large amount of personal property in the state of Nevada, for the term of 3 years and 5 months; the second part was an agreement for the sale of the same property by the lessors to the lessee; and the third part provided for an assignment of the agreement to a corporation to be formed by the second party, and for an undertaking to secure the faithful performance of the agreement on his part. The provision for the assignment reads as follows:

"The party of the second part shall have the right to make one assignment and transfer of this agreement in its entirety, including part 1 and part 2 hereof, and only in its entirety, to a corporation formed or to be formed by him for that purpose: provided, however, that the party of the second part shall be a stockholder and director of said corporation and shall be its duly appointed and acting manager for said Ranch during the entire life of this agreement; and provided, further, that said corporation shall be a party to said assignment and shall therein and thereby assume the performance of all and singular the terms, covenants, promises and conditions of this agreement, and every part thereof."

The provision for the undertaking reads as follows:

"Contemporaneously with the execution of this agreement, and as a condition precedent to this agreement becoming a binding contract on the part of the parties of the first part and to the party of the second part's acquiring any rights hereunder, the party of the second part shall, as principal, enter into and deliver to the parties of the first part an undertaking satisfactory in form to the parties of the first part, with sureties satisfactory to the parties of the first part, in the penal sum of $25,000.00, by which said undertaking said party of the second part as principal and said sureties shall agree to indemnify the parties of the first part and hold them harmless against all disbursements and applications of moneys or property by the party of the second part otherwise than strictly as herein agreed and said principal shall be bound by said undertaking both as a party to this agreement and as such active manager of said corporation assignee."

On the following day, August 23, 1923, the plaintiff in error executed the bond or undertaking on which this action was brought. The bond recites and provides:

"Whereas, Walter W. Akers, hereinafter called the employee, has been appointed to a position in the service of Reservation Land & Cattle Co. and Elizabeth A. Rodgers and Millie R. Jones, as their interests may appear, hereinafter called the employer;

"Whereas, said employee has been required to furnish bond:

"Now, therefore, in consideration of a certain premium to be paid annually in advance during the term of this bond, it is hereby agreed that the Maryland Casualty Company, a corporation of Maryland, hereinafter called the company, will, within two (2) months after the receipt of satisfactory proofs of loss, reimburse the employer for any loss, not exceeding twenty-five thousand dollars ($25,000), of money, securities or other personal property (including that for which the employer may be responsible to others), which the employer shall have sustained by reason of any act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction or wilful misapplication on the part of the employee, directly or through connivance with others, while in the performance of his duties in any position in the service of said employer and occurring during the continuance of this bond."

The bond thus executed was delivered to Jones and Rodgers, and Akers thereupon entered into possession of the demised premises under the terms of the lease. Thereafter the lease was rescinded or canceled by mutual consent of the parties, and the present action was brought to recover damages for breach of the conditions of the bond. It is apparent at a glance that the principal procured and delivered the bond to the lessee in order to comply with the agreement of the previous day, and the court below found that the bond was executed by the plaintiff in error, with full and complete knowledge of all the terms, covenants, conditions, and provisions of the agreement, for the purpose and with the object of enabling the principal to perform the condition precedent and comply therewith, with the intention and purpose that such principal should, and with the knowledge that he would deliver the same to the lessors, and with the intention and purpose that the lessors, and each of them, would rely thereon as a full and complete compliance with the provisions of said agreement. This finding is, we think, a legitimate inference from the facts and circumstances in evidence.

There is a suggestion in the brief that the purpose of the bond was to protect the lessors against the acts of the lessee as an individual until the corporation should be formed and to thereafter protect the new corporation.

The agreement for the bond, however, admits of no such construction. The consent to the assignment was upon the express condition that the principal in the bond should be a stockholder, director, and duly appointed acting manager for the demised property during the life of the agreement, and the agreement for the undertaking was that the principal and surety should hold the lessors harmless against all disbursements and applications of moneys or property by the principal, otherwise than as strictly provided in the agreement, both as an individual and as manager of the corporation. It will be conceded that the terms "employer" and "employee" are inapt ones to describe the true relationship between the parties; but, regardless of this, it is manifest from the record that the purpose of the bond was to protect the defendant in error against the wrongful acts of the principal named in the bond, whether individually or as manager of the corporation, and that intent must be given effect.

The judgment of the court below is affirmed.